ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (259916)
MICHAEL ALBERT (301120)
JUAN CARLOS SANCHEZ (301834)
KENNETH P. DOLITSKY (345400)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| RUMEN MAKAVEEV, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br> vs.<br><br>RxSIGHT, INC., et al.,<br><br>     Defendants. | Case No. 8:25-cv-01596-FWS-KES<br><br><u>CLASS ACTION</u><br><br>MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL<br><br>DATE:  October 23, 2025<br>TIME:  10:00 a.m.<br>JUDGE: Hon. Fred W. Slaughter<br>CTRM:  10D |

4924-8787-7738.v1

## I.    INTRODUCTION

Two related securities class action lawsuits (the "Related Actions") are pending before this Court, brought on behalf of purchasers of RxSight, Inc. ("RxSight" or the "Company") securities between May 7, 2024 and July 8, 2025, inclusive (the "Class Period").[1]   The complaints allege similar claims against defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires district courts to resolve consolidation before appointing a lead plaintiff in securities cases.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  As discussed below, because common questions of law and fact are involved in the Related Actions, consolidation is appropriate.  *See* Fed. R. Civ. P. 42(a).

As soon as practicable after its decision on consolidation, the Court "shall appoint the most adequate plaintiff as lead plaintiff."  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the "member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §78u-4(a)(3)(B)(i).  Here, the Pension Fund should be appointed lead plaintiff because it filed a timely motion, has a significant financial interest in the outcome of this litigation, and will typically and adequately represent the class's interests.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Pension Fund's selection of Robbins Geller Rudman & Dowd LLP to serve as lead counsel should be approved because the Firm possesses extensive experience

---

[1]    The Related Actions are *Makaveev v. RxSight, Inc.*, No. 8:25-cv-01596 (C.D. Cal.) ("*Makaveev* Action"); and *Gémesi v. RxSight, Inc.*, No. 8:25-cv-02093 (C.D. Cal.) ("*Gémesi* Action").  The *Makaveev* Action alleges a class period between November 7, 2024 and July 8, 2025, while the *Gémesi* Action alleges a class period between May 7, 2024 and July 8, 2025.  The Michigan Laborers' Pension Fund (the "Pension Fund") adopts the longer, more inclusive Class Period.  *See Duffaydar v. Sonder Holdings Inc.*, 2024 WL 4454910, at *3 (C.D. Cal. Oct. 9, 2024) ("Courts usually use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest under that period.") (cleaned up).

- 1 -

4924-8787-7738.v1

prosecuting securities class actions and will adequately represent the interests of all class members.

## II.   FACTUAL BACKGROUND[2]

RxSight is a commercial-stage medical technology company focused on the treatment of cataracts. The Company's principal product is the RxSight Light Adjustable Lens system, which is comprised of an intraocular light adjustable lens ("LAL") and a light delivery device ("LDD"). RxSight's business follows a "razor/razor-blade" model: grow the installed base of high-priced LDDs to drive recurring, higher-margin LAL procedures. RxSight stock trades under the ticker RXST on the Nasdaq.

Throughout the Class Period defendants touted rising utilization "across the installed base," (*Gémesi* Action, ECF 1 at ¶9), claimed newer customer cohorts were adopting as fast as or faster than prior cohorts, and represented that RxSight's field teams effectively trained and supported practices to accelerate growth. But in reality, the Company's field organization was inadequately structured and underperforming; newer cohorts needed more support than prior cohorts and were adopting more slowly; and utilization across the installed base was declining. As a result, incremental LDD placements did not translate into expected LAL volume, undermining RxSight's growth model.

The truth began to emerge on April 2, 2025, when RxSight issued a press release reporting preliminary first quarter 2025 financial results, revealing a surprise revenue shortfall that materially missed consensus estimates by 5%. In addition, the first quarter 2025 preliminary results release unexpectedly revealed that LAL sales declined sequentially in the quarter. During the corresponding conference call on April, 3, 2025, defendant Ron Kurtz attributed the revenue and LAL sales miss to a "weakened" premium intraocular lens market, competitive sequential launches of new

---

[2]   While the Related Actions allege substantively similar facts, these allegations are based on the *Gémesi* Action. *See Gémesi* Action, ECF 1.

- 2 -

4924-8787-7738.v1

intraocular lenses, and abrupt changes in consumer sentiment, which he claimed resulted in the Company's "first year-over-year drop in same-store LAL sales." *Gémesi* Action, ECF 1 at ¶39. On this news, the price of RxSight common stock fell nearly 38%.

Then, on July 8, 2025, RxSight further revealed that LDD sales had collapsed 45% sequentially and LAL sales had declined for a second consecutive quarter. Defendants admitted newer customers had been adopting more slowly because they required more support and announced a "commercial pivot" to overhaul field support. *Gémesi* Action, ECF 1 at ¶47. On this news, the price of RxSight common stock suffered a further decline.

As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, the Pension Fund and other putative class members have suffered significant losses and damages.

## III. ARGUMENT

### A. The Related Actions Should Be Consolidated

The PSLRA requires the Court to consolidate the Related Actions before appointing a lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). Consolidation pursuant to Rule 42(a) is proper when actions involve common legal and factual questions. Fed. R. Civ. P. 42(a).

Here, the Related Actions each assert claims on behalf of purchasers of securities during overlapping periods against the same defendants for alleged violations of the federal securities laws. Consolidation will prevent needless duplication and possible confusion, as well as potentially inconsistent jury verdicts. There is also little or no risk of prejudice to the parties from consolidation. *See generally Lloyd v. CVB Fin. Corp.*, 2011 WL 13128303, at *3 (C.D. Cal. Jan. 21, 2011).

Accordingly, the Court should consolidate the Related Actions.

- 3 -

4924-8787-7738.v1

## B.     The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."   15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).  First, "[n]ot later than 20 days" after the complaint is filed, a notice must be published "in a widely circulated national business-oriented publication or wire service" advising members of the purported plaintiff class "of the pendency of the action, the claims asserted therein, and the purported class period" and that "not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff."  15 U.S.C. §78u-4(a)(3)(A)(i).  The statutory notice in this case was published on July 22, 2025 via *Business Wire*.  *See* Declaration of Danielle S. Myers in Support of Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Myers Decl."), Ex. A.  A second notice was filed notifying investors of the filing of the *Gémesi* Action on September 16, 2025 via *Business Wire*.  *See* Myers Decl., Ex. B.

Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person that:

> (aa)   has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).  The Pension Fund meets these requirements and should therefore be appointed Lead Plaintiff.

- 4 -

4924-8787-7738.v1

**1.    This Motion Is Timely**

The July 22, 2025 and September 16, 2025 notices published on *Business Wire* advised purported class members of the pendency of the first-filed action, the claims asserted, and the right to move the Court for appointment as lead plaintiff by April 22, 2025.  *See* Myers Decl., Exs. A, B.  Because the Pension Fund's motion has been timely filed, it is eligible for appointment as lead plaintiff.

**2.    The Pension Fund Has the Largest Financial Interest in the Relief Sought by the Class**

As evidenced by its Certification and loss chart, the Pension Fund suffered approximately $253,462 in losses as a result of defendants' alleged misconduct.  *See* Myers Decl., Exs. C, D.  To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest.  Therefore, the Pension Fund satisfies the PSLRA's prerequisite of having the largest financial interest.

**3.    The Pension Fund Satisfies the Rule 23 Typicality and Adequacy Requirements**

Next, the Court "'must then focus its attention on [the plaintiff that has the largest financial interest] and determine, based on the information he has provided in [its] pleadings and declarations, whether [it] satisfies the requirements of Rule 23(a), in particular those of "typicality" and "'adequacy.'"  *Schwartz v. Opus Bank*, 2017 WL 5468820, at *2 (C.D. Cal. Feb. 23, 2017) (quoting *Cavanaugh*, 306 F.3d at 730).  "Claims are 'typical' under Rule 23 if they are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'"  *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  The "'adequacy requirement is met if there are no conflicts between the representative and class interests and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation.'"  *Id.* (citation omitted).

The Pension Fund satisfies the typicality requirement because, like all other class members, it: (1) purchased RxSight common stock during the relevant time period; (2) was adversely affected by defendants' wrongful conduct; and (3) suffered

- 5 -

4924-8787-7738.v1

damages thereby. Moreover, the Pension Fund is highly incentivized to maximize the recovery for putative class members harmed by defendants' alleged wrongdoing based on, among other things, the substantial loss it suffered. Further, as a defined benefit pension plan overseeing more than $1 billion in assets for the benefit of thousands of plan members, the Pension Fund is precisely the type of institutional investor whose participation in securities class actions Congress sought to encourage through the enactment of the PSLRA: "Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members." *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001). The Pension Fund therefore satisfies the typicality and adequacy requirements of Rule 23 and is entitled to the PSLRA's most adequate plaintiff presumption.

Finally, as explained below, the Pension Fund has selected experienced and qualified counsel, further evidencing its ability to fairly and competently represent the interests of the putative class.

### C. The Court Should Approve the Pension Fund's Selection of Counsel

The PSLRA entitles the lead plaintiff to select and retain counsel to represent the class, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *see also In re Cohen*, 586 F.3d 703, 711-12 (9th Cir. 2009); *Cavanaugh*, 306 F.3d at 732-35. In this case, the Pension Fund has selected Robbins Geller.[3]

Robbins Geller, a 200-attorney nationwide law firm with offices in California, regularly practices complex securities litigation. The Firm's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. Courts throughout the country, including this District, have noted

---

[3] For a detailed description of proposed lead counsel's track record, resources, and attorneys, please see https://www.rgrdlaw.com. Paper copies of the Firm's resume is available upon the Court's request, if preferred.

- 6 -

4924-8787-7738.v1

Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases. *See, e.g.*, *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 636 (C.D. Cal. 2009) (noting that Robbins Geller lawyers have "extensive experience prosecuting suits of this nature"). Robbins Geller has obtained the largest securities fraud class action recoveries in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits, as well as an in-District trial victory in *HsingChing Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG (C.D. Cal.), where the jury returned a verdict for plaintiff, finding that defendants Puma Biotechnology, Inc. and its CEO committed securities fraud.[4]

Based upon its counsel's extensive experience and proven track record in securities class actions, the Pension Fund's selection of counsel is reasonable and should be approved.

**IV.   CONCLUSION**

The Related Actions involve common factual and legal questions and should be consolidated. In addition, the Pension Fund has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. Accordingly, the Pension Fund respectfully requests that the Court appoint it as Lead Plaintiff and approve its selection of Lead Counsel.

---

[4]   *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

4924-8787-7738.v1

DATED: September 22, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
KENNETH P. DOLITSKY

s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

WATKINS, PAWLICK, CALATI
  & PRIFTI, PC
LAUREN CRUMMEL
1423 E. Twelve Mile Road
Madison Heights, MI  48071
Telephone:  248/658-0797
248/658-0801 (fax)
lcrummel@wpcplaw.com

Additional Counsel

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for the Pension Fund, certifies that this brief contains 2,485 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 22, 2025

s/ Danielle S. Myers
DANIELLE S. MYERS

- 8 -

4924-8787-7738.v1