**BLEICHMAR FONTI & AULD LLP**

Lesley E. Weaver (SBN 191305)
lweaver@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Proposed Lead Plaintiff*
*Dr. David Goldman and Proposed*
*Lead Counsel for the Class*

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUMEN MAKAVEEV, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RXSIGHT, INC., RON KURTZ, and SHELLEY THUNEN,<br><br>Defendants. | Case No. 8:25-cv-01596-FWS-KES<br><br><u>CLASS ACTION</u><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF DR. DAVID GOLDMAN FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF HIS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF THE RELATED ACTIONS**<br><br>DATE: October 23, 2025<br>TIME: 10:00 a.m.<br>COURTROOM: 10D<br>JUDGE: Hon. Fred W. Slaughter |

*(case caption continues on following page)*

OLGA GÉMESI, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

RxSIGHT, INC., RON KURTZ, and SHELLEY THUNEN,

Defendants.

Case No. 8:25-cv-02093

Proposed Lead Plaintiff Dr. David Goldman respectfully submits this memorandum of points and authorities in support of his motion for: (1) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (2) approval of his selection of Bleichmar Fonti & Auld LLP ("BFA") to serve as Lead Counsel for the Class; (3) consolidation of the above captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) any such further relief as the Court may deem just and proper.

## I.   PRELIMINARY STATEMENT

There are two Related Actions pending against RxSight, Inc. ("RxSight" or the "Company") in this District. The Related Actions allege that RxSight and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). More specifically, the Related Actions allege that between May 7, 2024 and July 8, 2025 (the "Class Period"), Defendants misrepresented the utilization trends for its primary product, as well as the Company's ability to accelerate growth.[1]

The PSLRA states that the Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court

---

[1] The complaints in the Related Actions assert different class periods. The complaint in *Makaveev v. RxSight, Inc.*, No. 8:25-cv-01596-FWS-KES (C.D. Cal.) ("*Makaveev*") asserts a class period of November 7, 2024 to July 8, 2025, while the complaint in *Gémesi v. RxSight, Inc.*, No. 8:25-cv-02093 (C.D. Cal.) ("*Gémesi*") asserts a class period of May 7, 2024 to July 8, 2025. For purposes of appointing a Lead Plaintiff, courts generally apply the longest class period. *See Adams v. Biolase, Inc.*, 2013 WL 12128806, at *1 (C.D. Cal. Dec. 10, 2013). As such, the class period alleged in *Gémesi* is relied upon for this Motion.

is to determine which movant has the "largest financial interest" in the relief sought by the class in this litigation and whether that movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   Dr. Goldman respectfully submits that he is the "most adequate plaintiff" by virtue of, among other things, the approximately $222,000 in losses as calculated under a first-in, first-out ("FIFO") basis and the approximately $198,000 in losses as calculated under a last-in, first-out ("LIFO") basis that he incurred on his investments in RxSight securities during the Class Period.   Dr. Goldman also satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the Class, and he will fairly and adequately represent the Class.   Indeed, Dr. Goldman fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action.   *See* Declaration of Lesley E. Weaver ("Weaver Decl."), Ex. A.

Dr. Goldman has further demonstrated his adequacy by selecting BFA, a law firm with substantial experience in successfully prosecuting complex securities class actions, to serve as Lead Counsel for the Class.   Accordingly, Dr. Goldman respectfully requests that the Court appoint him as Lead Plaintiff and otherwise grant his motion.

## II.   FACTUAL BACKGROUND

RxSight is a medical technology company focused on the treatment of cataracts.   ¶ 5.[2]   The Company's principal product is its RxSight Light Adjustable Lens system, comprised of an intraocular light adjustable lens ("LAL") and a light delivery device ("LDD").   *Id.*   To use RxSight's system, a doctor first performs a

---

[2] All citations to ¶ __ are to the Complaint in *Gémesi*, ECF No. 1 unless otherwise noted.

standard cataract procedure and implants an LAL in the patient's eye. ¶ 6. Then, a few weeks later, the patient returns for a diagnostic exam to determine the proper lens prescription. *Id.* Using ultraviolet light from an LDD, the doctor then adjusts the LAL to optimize the patient's vision. *Id.*

Throughout the Class Period, Defendants allegedly misrepresented utilization trends, including asserting that newer groups of customers were adopting the RxSight system as fast or faster than prior customers, and claimed that the Company's field teams effectively trained and supported physician practices to accelerate growth. ¶ 9. For instance, Defendants stated "[w]e continue to see growth in monthly utilization across the installed base" which had been "accelerated" by the Company's "strategic clinical and marketing teams," claimed that newly acquired customers were "adding procedures" a "bit more rapidly" than older customers, and touted "ongoing demand and enthusiasm" and "robust growth." ¶¶ 26, 27, 29, 30.

In truth, RxSight's field organization was inadequately structured and underperforming, new customers needed more support than older customers and were adopting more slowly, and utilization across the installed base was declining. ¶ 10. Investors allegedly began to learn the truth on April 2, 2025, when RxSight disclosed a sequential decline in LAL sales and reduced full-year revenue guidance. ¶¶ 12, 39. Defendants attributed the poor results to a "weakened" premium intraocular lens market, competitive sequential launches of new lenses, and abrupt changes in consumer sentiment. ¶ 39. On this news, the price of the Company's stock declined $9.91 per share, or roughly 38%, from $26.12 per share on April 2, 2025, to $16.21 per share on April 3, 2025. *Id.*

Next, on July 8, 2025, Defendants revealed that LDD sales declined 45% sequentially and that LAL sales had declined for the second straight quarter. ¶ 13. Defendant Kurtz attributed the declines in LDD and LAL sales to a "slower ramp"

3

in LAL utilization by newer customers and announced the Company was "executing a commercial pivot" to reverse utilization trends, which included overhauling its "field support" by implementing initiatives "designed to close adoption gaps, enhance customer satisfaction, and to support sustained utilization trends."  ¶ 47. On this news, the price of the Company's stock declined $4.84 per share, or roughly 38%, from $12.79 per share on July 8, 2025, to $7.95 per share on July 9, 2025. *Makaveev* ECF No. 1 at ¶ 31.

## III.    ARGUMENT

### A.    Dr. Goldman Should Be Appointed Lead Plaintiff

Dr. Goldman respectfully submits that he should be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).  When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA] provides a simple . . . process for identifying the lead plaintiff pursuant to these criteria").  Here, Dr.  Goldman believes that he is the presumptively "most adequate plaintiff" because he: (1) complied with the PSLRA's procedural requirements; (2) believes he asserts the largest financial interest in the relief sought by the Class; and (3) satisfies Rule 23's typicality and adequacy requirements.

### 1.    Dr. Goldman Satisfied the PSLRA's Procedural Requirements

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). On July 22, 2025, Rumen Makaveev filed the first of the Related Actions which alleged that Defendants defrauded investors during the period of November 7, 2024 through

4

July 8, 2025. On the same day, counsel for Mr. Makaveev published a notice on *Business Wire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by September 22, 2025. *See* Weaver Decl. Ex. B.

On September 16, 2025, Olga Gémesi filed the second of the Related Actions which alleged that Defendants defrauded investors during a broader period of May 7, 2024 through July 8, 2025. The same day, counsel for Ms. Gémesi published a notice on *Business Wire* alerting investors to the broader Class Period. *See* Weaver Decl. Ex. C. As such, Dr. Goldman's motion is timely.

### 2. Dr. Goldman Believes He Has the Largest Financial Interest in the Relief Sought By the Class

Dr. Goldman believes that he has the "largest financial interest in the relief sought by the Class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Dr. Goldman incurred a loss of approximately $222,000 (FIFO) / $198,000 (LIFO) on his investments in RxSight securities during the Class Period.[3] To the best of Dr. Goldman's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation. Accordingly, Dr. Goldman believes that he has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

---

[3] In addition to losses, courts often consider various other metrics, including what are typically referred to as "*Lax* factors," to further analyze a movant's financial interest when warranted. *See Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (identifying (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered, as four factors for courts to consider when determining the largest financial interest). Dr. Goldman's PSLRA certification and loss calculations provide the necessary trading information to calculate his financial interest under all possible metrics, including recoverable losses, and does not presuppose that there is only one valid methodology. *See* Weaver Decl. Exs. D-E.

### 3.    Dr. Goldman Otherwise Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Dr. Goldman also otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, a movant need only make a "preliminary showing" that it satisfies the typicality and adequacy requirements of Rule 23.  *Roberti v. OSI Systems, Inc.*, 2014 WL 12845727, at *3 (C.D. Cal. Mar. 17, 2014).   Dr. Goldman satisfies both requirements.

Dr. Goldman's claims are typical of the claims of other purchasers of RxSight securities.  "To make a prima facie showing of typicality, a moving plaintiff should establish that its claims are similar to all class members." *Id.*  Here, like all other Class members, Dr. Goldman: (1) purchased RxSight securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and omissions; and (3) was damaged thereby. *See Farhar v. Ontrak, Inc.*, 2021 WL 2980589, at *4 (C.D. Cal. July 13, 2021) (typicality satisfied when "like all members of the class, [movant] purchased [company's] securities during the designated class period and alleges losses as a result of those transactions").  As such, Dr. Goldman satisfies the typicality requirement.

Dr. Goldman also satisfies the adequacy requirement of Rule 23.  The adequacy inquiry focuses on whether the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In that regard, "[a] court should inquire about the movant's interests in the outcome of the case and their willingness to vigorously represent the class's claims." *OSI Systems*, 2014 WL 12845727, at *3.  "Additionally, a court should ensure that the movant's interests do not conflict with those of the class and that the movant's counsel is capable and qualified." *Id.*  Dr. Goldman satisfies these elements because his substantial financial stake in the litigation provides him with the incentive to

6

vigorously represent the Class's claims and oversee counsel. Dr. Goldman's interests are aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Dr. Goldman and other Class members.

Indeed, Dr. Goldman has committed to discharge his obligations as a Lead Plaintiff under the PSLRA to oversee and supervise the litigation separate and apart from counsel, and submitted a sworn declaration as to his willingness and ability to fulfill those duties. *See* Weaver Decl., Ex. A. What's more, Dr. Goldman's declaration provides the Court with additional information supporting his bona fides, including explaining who he is, that he is a medical doctor and business owner with experience overseeing counsel, and is an experienced investor with approximately 16 years of investment experience. *Id.* ¶ 2. Dr. Goldman's declaration also explains how given his substantial financial interest in the litigation, he intends to continue to actively oversee counsel, review pleadings and motion papers, participate in discovery, and confer with counsel regarding litigation strategy. *Id*. ¶¶ 3–8.

Finally, Dr. Goldman has demonstrated his adequacy through his selection of BFA to serve as Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class actions and has repeatedly demonstrated an ability to conduct complex securities actions effectively.

**B.      Dr. Goldman Selected Well Qualified Counsel**

Under the PSLRA, the Lead Plaintiff is given the right, "subject to the approval of the court," to "select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal*., 586 F.3d 703, 712 (9th Cir. 2009).

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Weaver Decl. Ex. F. For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.). BFA also recently secured a $129 million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.). Previously, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Securities Litigation*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford International Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.). BFA also secured a $219 million resolution in *In re Genworth Financial, Inc. Securities Litigation*, 3:14-cv-00682-JAG (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia. Thus, the Court may be assured that by granting this motion, the proposed Class will receive the highest caliber of legal representation.

### C.    The Related Actions Should Be Consolidated

Federal Rule of Civil Procedure 42(a) allows the Court to consolidate actions that "involve a common question of law or fact." There are two Related Actions pending against RxSight in this District:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Makaveev v. RxSight, Inc.* | 8:25-cv-01596 | July 22, 2025 |
| *Gémesi v. RxSight, Inc.* | 8:25-cv-02093 | September 16, 2025 |

The Related Actions present substantially similar factual and legal issues because they allege the same legal claims against the same defendants, arise out of

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 8:25-cv-01596-FWS-KES

a substantially similar course of conduct, and allege similar types of misrepresentations. While the Related Actions assert different class periods, this minor difference does not outweigh the benefits of judicial economy that would be created from consolidation. Accordingly, consolidation of these actions, and any similarly related subsequently filed or transferred actions, is appropriate under Rule 42. *See Biolase*, 2013 WL 12128806, at *1–2 (consolidating related securities class actions asserting different class periods).

## IV.   CONCLUSION

For the foregoing reasons, Dr. Goldman respectfully requests that the Court: (1) appoint him as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel; (3) consolidate the Related Actions; and (4) grant any such further relief as the Court may deem just and proper.

Dated: September 22, 2025                Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Lesley E. Weaver*
Lesley E. Weaver (SBN 191305)
Anne K. Davis (SBN 267909)
Adam C. McCall (SBN 302130)
lweaver@bfalaw.com
adavis@bfalaw.com
amccall@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

*Counsel for Proposed Lead Plaintiff*
*Dr. David Goldman and Proposed Lead*
*Counsel for the Class*

9

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Dr. David Goldman, certifies that this brief contains 2,663 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 22, 2025          */s/ Lesley E. Weaver*
                                   Lesley E. Weaver

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

/s/ Lesley E. Weaver
Lesley E. Weaver

11

MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 8:25-cv-01596-FWS-KES