ROBBINS GELLER RUDMAN
    & DOWD LLP
SPENCER A. BURKHOLZ (147029)
LAURA ANDRACCHIO (187773)
CHRISTOPHER R. KINNON (316850)
ASHLEY G. PYLE (364175)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
landracchio@rgrdlaw.com
ckinnon@rgrdlaw.com
apyle@rgrdlaw.com

Lead Counsel for Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| In re RxSIGHT, INC. SECURITIES LITIGATION | Case No. 8:25-cv-01596-FWS-KES |
| | CLASS ACTION |
| This Document Relates To: | PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT |
| ALL ACTIONS. | |
| | DATE:        May 28, 2026<br>TIME:        10:00 a.m.<br>CTRM:       10D<br>JUDGE:     Hon. Fred W. Slaughter |

4908-8137-6920.v1

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT.................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................3

        A.      The RxSight System and Business Model.................................... 3

        B.      Problems Emerge ......................................................................... 4

        C.      The Truth Is Gradually Revealed.................................................. 4

III.    LEGAL STANDARDS.............................................................................. 5

IV.     THE COMPLAINT STATES A RULE 10b-5(b) CLAIM........................... 5

V.      THE COMPLAINT ADEQUATELY PLEADS FALSITY .......................... 6

        A.      Defendants Made Misleading Statements About Adoption, Cohorts, and Utilization .................................................................. 7

                1.      Defendants Told Investors for a Year that Adoption Was Improving and Utilization Was Growing .................................. 7

                2.      Defendants Admitted These Same Metrics Were Worsening and Flat When They Said the Opposite ................... 9

                3.      Defendants Admitted Reviewing the Same Metrics They Said Were Improving When They Spoke................................ 11

                4.      Defendants' "Macro" and "Transitory" Explanations Concealed the Truth................................................................ 11

        B.      Plaintiff Adequately Pleads the Falsity of Defendants' Patient Outcomes and Clinical Advantage Statements .................................. 12

                1.      Defendants Misled Investors About Patient Outcomes and Clinical Advantages............................................................ 12

                2.      Plaintiff Pleads Sufficient Sources for Their Patient Outcome Allegations .............................................................. 15

                3.      Defendants' Statements that LALs Were "More Reliable" and "Better" Are Actionable .................................. 15

VI.     PLAINTIFF ADEQUATELY ALLEGES AN ITEM 303 CLAIM ............ 16

VII.    PLAINTIFF ADEQUATELY PLEADS SCIENTER ............................... 17

        A.      The Complaint Adequately Alleges Actual Knowledge ................... 17

                1.      Defendants' Admissions Establish Actual Knowledge............ 17

- i -

**Page**

2.    Defendants' Adoption, Utilization, and Customer
Satisfaction Statements Establish Actual Knowledge............. 19

3.    Defendants' "Study Patient" Reward Program Supports
an Inference of Scienter ........................................................ 20

B.    The Complaint Satisfies the Core Operations Doctrine ..................... 20

C.    Insider Sales and the Secondary Public Offering Support a
Strong Inference of Scienter ............................................................. 21

VIII.  CONCLUSION ................................................................................................. 23

4908-8137-6920.v1

# TABLE OF AUTHORITIES

**Page**

CASES

*Alghazwi v. Beauty Health Co.*,
   801 F. Supp. 3d 982 (C.D. Cal. 2025) ................................................................ 18

*Baron v. Hyrecar Inc.*,
   2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) ...................................... 18, 20, 21

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) .......................................................................... 12, 14

*Brookman v. Webtoon Ent. Inc.*,
   2025 WL 3484589 (C.D. Cal. Dec. 2, 2025) ........................................................ 8

*Carr v. Zosano Pharma Corp.*,
   2021 WL 3913509 (N.D. Cal. Sep. 1, 2021) ................................................. 11, 19

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
   2022 WL 4491093 (S.D. Cal. Sep. 27, 2022) ...................................................... 21

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v.
   Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................................ 9

*Constr. Laborers Pension Tr. of Greater St. Louis v.
   Funko Inc*,
   166 F.4th 805 (9th Cir. 2026) ..................................................................... *passim*

*Curry v. Yelp Inc.*,
   2015 WL 1849037 (N.D. Cal. Apr. 21, 2015) .................................................... 14

*Curry v. Yelp Inc.*,
   875 F.3d 1219 (9th Cir. 2017) ............................................................................ 22

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
   63 F.4th 747 (9th Cir. 2023) ............................................................................ 6, 9

*Hessong v. Pinterest, Inc.*,
   2021 WL 4339193 (N.D. Cal. Sep. 23, 2021) .................................................... 12

- iii -

**Page**

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ........................................................................... 20

*In re Apple Inc. Sec. Litig.*,
  2020 WL 2857397 (N.D. Cal. June 2, 2020) ...................................................... 10

*In re Apple Inc. Sec. Litig.*,
  2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ...................................................... 18

*In re Arrowhead Pharms., Inc. Sec. Litig.*,
  782 F. App'x 572 (9th Cir. 2019) ..................................................................... 22

*In re Daou Sys., Inc.*,
  411 F.3d 1006 (9th Cir. 2005) .......................................................................... 6

*In re Dropbox Sec. Litig.*,
  2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) ................................................... 14

*In re ICN Pharms., Inc. Sec. Litig.*,
  299 F. Supp. 2d 1055 (C.D. Cal. 2004) ............................................................ 14

*In re Nektar Therapeutics Sec. Litig.*,
  34 F.4th 828 (9th Cir. 2022) ....................................................................... 6, 14

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ......................................................................... 21

*In re ON24, Inc. Sec. Litig.*,
  2026 WL 45259 (9th Cir. Jan. 7, 2026) ............................................................ 17

*In re Quality Sys., Inc. Sec. Litig.*,
  865 F.3d 1130 (9th Cir. 2017) ....................................................................... 8, 9

*In re Questcor Sec. Litig.*,
  2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ...................................................... 22

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ........................................................................... 22

- iv -

4908-8137-6920.v1

**Page**

*In re Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018)....................................................2, 10

*In re SunPower Corp. Sec. Litig.*,
2018 WL 1863055 (N.D. Cal. Apr. 18, 2018) ....................................................10

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002)...........................................................................22

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012)...............................................................................6

*Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*,
2025 WL 2426714 (C.D. Cal. Aug. 20, 2025)...................................9, 12, 15, 22

*Jaeger v. Zillow Grp., Inc.*,
644 F. Supp. 3d 857 (W.D. Wash. 2022) ...........................................................21

*Kairalla v. Advanced Med. Optics, Inc.*,
2008 WL 2879087 (C.D. Cal. June 6, 2008)......................................................19

*Karinski v. Stamps.com, Inc.*,
2020 WL 281716 (C.D. Cal. Jan. 17, 2020).........................................................6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018).......................................................................*passim*

*Kong v. Fluidigm Corp.*,
2023 WL 2134394 (9th Cir. Feb. 21, 2023).........................................................9

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002)......................................................................19, 21

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
2017 WL 5635424 (C.D. Cal. Aug. 20, 2017)....................................................19

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
39 F.4th 1092 (9th Cir. 2022)..............................................................................9

4908-8137-6920.v1

**Page**

*Macquarie Infrastructure Corp. v. Moab Partners, L. P.*,
   601 U.S. 257 (2024) ................................................................................ 16

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) .................................................................................... 5

*Mazzaferro v. Aruba Networks Inc.*,
   2015 WL 456534 (N.D. Cal. Feb. 2, 2015)............................................. 14

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008)........................................... 6, 19, 21, 22

*N.M. State Inv. Council v. Ernst & Young LLP*,
   641 F.3d 1089 (9th Cir. 2011)......................................................5, 17, 18

*Okla. Firefighters Pension & Ret. Sys. v. Ixia*,
   2015 WL 1775221 (C.D. Cal. Apr. 14, 2015).........................................22

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ........................................................................*passim*

*Park v. GoPro, Inc.*,
   2019 WL 1231175 (N.D. Cal. Mar. 15, 2019)........................................22

*Pittleman v. Impac Mortg. Holdings, Inc.*,
   2009 WL 648983 (C.D. Cal. Mar. 9, 2009) ........................................... 19

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998)............................................... 12, 13

*Plumbers & Pipefitters Loc. Union #295 Pension Fund v.
   CareDx, Inc.*,
   2025 WL 556283 (N.D. Cal. Feb. 18, 2025).........................................20

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014).......................................................... 9, 19

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014)........................................... 8, 11, 18, 19

- vi -

**Page**

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) ............................................................................... 21

*S. Ferry LP #2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009) ........................................................... 19

*S. Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ............................................................................... 22

*Scandlon v. Blue Coat Sys., Inc.*,
2013 WL 308879 (N.D. Cal. Jan. 25, 2013) ........................................................ 19

*Smyth v. China Agritech, Inc.*,
2013 WL 12145047 (C.D. Cal. Sep. 26, 2013) .................................................... 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ........................................................................................ 17, 22

*Veal v. LendingClub Corp.*,
423 F. Supp. 3d 785 (N.D. Cal. 2019) .................................................................. 19

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
321 F. Supp. 3d 1133 (C.D. Cal. 2018) .................................................................. 6

*Zamani v. Carnes*,
491 F.3d 990 (9th Cir. 2007) ............................................................................... 10

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................................... 21

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§77k .......................................................................................................................... 16

17 C.F.R.
§229.303(b)(2)(ii) ................................................................................................. 16

4908-8137-6920.v1

## I.    PRELIMINARY STATEMENT

This is not a "fraud by hindsight" or missed guidance case.  Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss (ECF 47-1) ("Mem.") at 1-2.  Defendants admitted at the end of the Class Period that worsening adoption and flat utilization of RxSight's only product had occurred contemporaneously with their statements that, based on their review of the data, these metrics were improving and growing.  ¶¶121-123.[1]  Defendants' admissions, not Plaintiff's "*ipse dixit*" (Mem. at 2), demonstrate their earlier, positive statements were knowingly false when made.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (securities fraud adequately alleged when statements "directly contradict what the defendant knew at that time").

A year before Defendants' admissions, on July 10, 2024, Wells Fargo published a survey of cataract surgeons indicating poor real-world adoption and utilization of RxSight's adjustable lens technology—including that it increased costs without improving outcomes, was too expensive for patients, and was too time consuming for doctors.  ¶89.  RxSight's stock price fell approximately 30% over the following weeks.  *Id.*

In response, Defendants told the market the opposite for the next year: that "***all cohorts continue to grow***" (¶91(b)); "***adoption is higher for our newer customers***" (¶92(b)) and had "***accelerated faster***" in 2023 and 2024 (¶91(b)); and utilization "***continues to grow***" (¶99(b)).  *See also* ¶¶86, 95, 100(a)-(b), 106.

But on July 8, 2025, Defendants admitted the truth, contradicting their earlier positive statements: that "***over the last few quarters***" RxSight's "***newer customers [had been] adopting more slowly than our previous customers***" (¶122), causing

---

[1]  "Defendants" refers to RxSight, Inc. ("RxSight" or the "Company"), Ron Kurtz ("Kurtz"), and Shelley Thunen ("Thunen").  The alleged "Class Period" is November 9, 2023 through July 8, 2025, inclusive.  ¶4.  Unless otherwise stated, all "¶__" citations are to Lead Plaintiff Michigan Laborers' Pension Fund's ("Plaintiff") Amended Complaint for Violations of the Federal Securities Laws (ECF 46) ("Complaint"), emphasis is added, and citations are omitted.

- 1 -

4908-8137-6920.v1

adoption "challenges" (¶18); and that utilization had been "*pretty flat going back four quarters*," with each newer cohort down "*more than the one before*" (¶122).  Mem. at 2.

"[G]oing back four quarters" from July 2025 means that the slowing adoption and flat utilization existed since 2Q24,[2] when Defendants started telling investors the opposite.  ¶¶86, 91(a)-(b), 92(b), 95, 99(b), 100(a)-(b), 106.  Defendants' admissions did not reveal "emerging challenges" but a year-long, undisclosed negative trend.  Mem. at 2.  Defendants' fact arguments about the meaning of their admissions (*id.* at 21-22) cannot be resolved at the pleading stage.  *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *7 (C.D. Cal. June 7, 2018).

Defendants also admitted when they made the misleading statements that they did so "look[ing] internally at our data."  ¶100(b); *see, e.g.*, ¶¶86, 92(b), 95.  So Defendants cannot argue they did not know those metrics were flat or declining when they spoke.  ¶¶137-138; *see Constr. Laborers Pension Tr. of Greater St. Louis v. Funko Inc*, 166 F.4th 805, 832 (9th Cir. 2026) (knowledge of contradictory data is established when senior executives monitor and discuss core operational metrics).  Because Defendants: (i) admitted they looked at this data while touting improving adoption and utilization growth; and (ii) subsequently admitted worsening adoption and flat utilization had occurred *during the same quarters in which Defendants said they were improving*, Plaintiff adequately alleges that these earlier statements were knowingly false when made.  ¶¶86, 92(b), 95, 100(b), 137-138.

Defendants further admitted previously-concealed "customer satisfaction" problems on July 8, 2025, that caused the slowing adoption and flat utilization.  ¶122.  This disclosure corroborates Plaintiff's allegations that Defendants repeatedly misled investors about patient outcomes.  ¶¶73, 75-76, 78(b), 80, 83, 99(a), 104(a), 118(d).

---

[2]   RxSight's fiscal quarters are abbreviated throughout.  Thus, "2Q24" for example, represents the second quarter of the fiscal year 2024.  RxSight's fiscal year matches the calendar year.

- 2 -

4908-8137-6920.v1

Defendants used limited, controlled clinical results to claim that RxSight's technology achieved "better vision ***without glasses***." ¶¶73(a), 75, 78, 83(a), 83(c), 99(a), 104(a), 118(d). These statements were misleading because real-world outcomes significantly diverged, with most customers still requiring glasses. ¶¶42-45, 137-138.

Rather than contend with Plaintiff's particularized allegations, Defendants demand evidence. Mem. at 2, 9. But the Private Securities Litigation Reform Act of 1995 ("PSLRA") does not require proof, just particularity, and "'did not impose an insurmountable standard.'" *Funko*, 166 F.4th at 820-21. Accepting Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Complaint adequately pleads falsity and a strong inference of scienter at least as compelling as any benign inference. Defendants' motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND

### A.   The RxSight System and Business Model

Cataract surgery replaces the eye's natural lens with an intraocular lens ("IOL"). ¶30. Conventional IOLs provide vision at a single distance, nearly always require glasses following surgery, and are typically covered by Medicare or insurance. ¶31. Premium IOLs promise superior results but cost $1,000-$4,000, are not covered, and often produce side effects like halos or glares. ¶32.

RxSight's sole product is the RxSight Light Adjustable Lens system ("RxSight System"): a light adjustable lens ("LAL" and "LAL+," together "LALs"), a premium IOL, and a light delivery device ("LDD"). ¶¶6, 33. Unlike other IOLs, RxSight purports to let doctors adjust the LAL after implantation to achieve "LASIK-level" (¶76(a)) results without glasses. ¶¶42-43.

RxSight's key performance metrics are "adoption" and "utilization." ¶39. "Adoption" means a customer had purchased an LDD and started "utilizing" the technology. *Id.* "Utilization" means the number of LAL procedures per LDD per month. ¶40. Each year's new customers are a "cohort." ¶41.

- 3 -

4908-8137-6920.v1

### B.    Problems Emerge

As surgeons gained clinical experience with the RxSight System, they told Defendants by late 2023 that LALs did not provide superior outcomes to traditional IOLs and were not worth the increased cost for most patients.  ¶¶44-45, 47-48. Defendants also knew that adoption was slowing and utilization was flat before they repeatedly told investors the opposite throughout 2024 and 2025. ¶¶46-53.  RxSight also completed a public offering in May 2024 for proceeds of over $115 million. ¶81.

### C.    The Truth Is Gradually Revealed

The truth was gradually revealed in a series of partial disclosures from July 2024 through July 2025. ¶¶59-70.  On July 10, 2024, Wells Fargo's survey of cataract surgeons revealed they believed RxSight's technology "increases costs without a significant improvement," was "too expensive," and was "extremely time consuming." ¶60.  Accordingly, RxSight's stock price fell. *Id.*

On an August 5, 2024 earnings call, Defendants denied that the concerns in the Wells Fargo survey were affecting adoption or utilization, stating that all cohorts were growing and that newer customers were adopting faster.  ¶61.

On November 7, 2024, the Company revealed a quarterly decline in utilization and flat LDD placements, with RxSight's stock price declining nearly 7%. ¶62.  But the stock continued to trade at artificially inflated prices, as Defendants blamed the 3Q24 results on external factors. *Id.*

On January 12, 2025, Defendants revealed declining 4Q24 LDD sales growth year-over-year, heightening investor concerns about decelerating adoption and causing RxSight's stock price to decline by over 8% the next day.  ¶63.  But Defendants assured investors that cohorts continued to grow in their February 2025 earnings call.  ¶106.

On April 2-3, 2025, Defendants revealed sequential declines in revenue, LDD sales, and LAL sales, and year-over-year declining utilization, admitting that cohorts were "not growing quite as quickly."  ¶64.  Consequently, the price of RxSight's

- 4 -

4908-8137-6920.v1

common stock declined nearly 42%, but it continued to trade at artificially inflated prices as Defendants misleadingly blamed a "weakened premium IOL market" and "abrupt changes in consumer sentiment," while concealing the adoption and utilization problems.  ¶65.

On July 8, 2025, Defendants admitted adoption "challenges" (¶146) "over the last few quarters" and "flat" utilization going back at least "four quarters," announcing "a commercial pivot" to reverse these negative trends and address a previously undisclosed "customer satisfaction" problem. ¶67.  Accordingly, the price of RxSight stock declined nearly 48%.  ¶68.

During the Class Period, RxSight's stock price traded at an artificially inflated high of over $64 per share. ¶70.  By the end of the Class Period, the price collapsed to under $8 per share.  *Id.*  RxSight lost $1.87 billion in market capitalization since its May 2024 offering.  *Id.*

## III.   LEGAL STANDARDS

To defeat a motion to dismiss, Plaintiff "need only allege 'enough facts to state a claim to relief that is plausible on its face.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011).  Courts "'accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs.'" *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011).  "Importantly, the PSLRA 'did not impose an insurmountable standard,'" and a complaint "survives dismissal if the allegations . . . 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Funko*, 166 F.4th at 820-21.

## IV.   THE COMPLAINT STATES A RULE 10b-5(b) CLAIM

Defendants do not challenge most Rule 10b-5(b) elements, including the connection to the purchase or sale of a security, reliance, loss causation, and economic loss. *Khoja*, 899 F.3d at 1008.  Instead, they argue the Complaint does not satisfy the PSLRA standards for pleading falsity and "a strong inference of scienter," and that it does not state an Item 303 claim.  Mem. at 6-23.

- 5 -

4908-8137-6920.v1

But by "'specify[ing] each statement alleged to have been misleading, the reason or reasons why the statement is misleading,'" and "'stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,'" the Complaint satisfies the PSLRA and Federal Rule of Civil Procedure 9(b) pleading requirements. *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012); *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005). Defendants' arguments fail for the reasons below.

## V. THE COMPLAINT ADEQUATELY PLEADS FALSITY

To determine falsity, "the court applies the objective standard of a 'reasonable investor'" and does "not require a 'strong inference of fraud'" but only "the reasonable inference standard of plausibility set out in *Twombly* and *Iqbal*." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 764, 766 (9th Cir. 2023).

Defendants argue the Complaint does "what the PSLRA prohibits." Mem. at 7. But Plaintiff "set[s] out in their [C]omplaint each statement alleged to be misleading, and the 'reason or reasons why the statement is misleading,'" by time period. *Funko*, 166 F.4th at 820 (citing 15 U.S.C. §78u-4(b)(1)).[3] Plaintiff also identifies each statement's source, speaker, and date chronologically. ¶¶72-120.[4] This satisfies the PSLRA. *See, e.g.*, *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *9 (C.D. Cal. Jan. 17, 2020) ("quot[ing] specific statements and then explain[ing] in the subsequent paragraphs why they are allegedly false and misleading" satisfies the PSLRA).[5]

---

[3]   *E.g.*, ¶¶79, 87, 97, 102, 107, 114, 119.

[4]   *E.g.*, ¶¶73, 75-76, 78, 82-83, 85-86, 88, 91-92, 95, 99-100, 104, 106, 110-113, 117-118.

[5]   *In re Nektar Therapeutics Sec. Litig.*, 34 F.4th 828, 835 (9th Cir. 2022), and *Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1146-47 (C.D. Cal. 2018), both rely on *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008), in which the plaintiff, unlike here, alleged that virtually every statement made during the class period concerning the company's financial performance was false without tethering those statements to specific contemporaneous facts demonstrating falsity.  Mem. at 6-7.

- 6 -

### A. Defendants Made Misleading Statements About Adoption, Cohorts, and Utilization

In 2Q24, Defendants said adoption was accelerating in the "'23" and "'24" cohorts. ¶91(b). In 3Q24, they said utilization "continues to grow." ¶99(b). In 4Q24, they said cohorts "continu[e] to grow" even faster. ¶106. And in 1Q25, they said RxSight was not "anywhere near a saturation point" regarding adoption. ¶112(c). But on July 8, 2025, Defendants admitted that utilization had been flat "going back four quarters" and that the Company had experienced slowing adoption for "the last few quarters." ¶122. Going back four quarters necessarily includes the quarters in which Defendants made the misleading statements. ¶¶86, 91-92, 95, 99(b), 100, 106, 112.

### 1. Defendants Told Investors for a Year that Adoption Was Improving and Utilization Was Growing

Wells Fargo's July 10, 2024 analyst report partially disclosed poor surgeon opinions of RxSight's technology (¶89), challenging Defendants' 1Q24 statements that they had "seen [a] steady increase in visibility and adoption of the technology" and cohort growth (¶¶85-86). The survey revealed that doctors believed RxSight "increases costs without a significant improvement in clinical outcomes" and was "too expensive for the patients and extremely time consuming." ¶89. Accordingly, RxSight's stock price dropped nearly 13% in one day and approximately 30% between July 10, 2024 and August 5, 2024. *Id.*

In response, beginning on August 5, 2024, Defendants told investors for over a year that their adoption was improving and utilization growing: "adoption by different cohorts of installs . . . *in '23 and '24 have accelerated faster*"; *all cohorts continue to grow . . . [with] newer customers getting going faster*" (¶91(b)); "*adoption is higher for our newer customers*" (¶92(b)); "*we've seen an overall upward [utilization] trend consistently*" (¶95); and "[u]tilization . . . continues to grow" (¶99(b)).[6]

---

[6] *E.g.*, ¶¶89, 91(a)-(b), 92(a)-(b), 95, 99(b), 100(a)-(b), 106.

- 7 -

4908-8137-6920.v1

Defendants' statements recouped any losses from the July 10, 2024 partial disclosure, with analysts reporting that RxSight had "*dispell[ed] recent investor concerns that . . . growth/utilization may be slowing*," that "*newer placements are ramping faster than older ones*," that "adoption is accelerating" (¶94), and that "utilization for each system placement cohort continues to grow" (¶101). *E.g.*, ¶108.

But Defendants admitted in 2Q25 that the opposite was true: "[N]ewer customers [we]re adopting more slowly than our previous customers," causing "adoption gaps" (¶122) and "adoption challenges" (¶18) "*over the last few quarters*," and utilization had been "*flat going back four quarters*" (¶122). Defendants previously admitted that they made the alleged misstatements (*i.e.*, 2Q24 – 2Q25) while "look[ing] internally at our data." ¶100(b).

Thus, these statements "'affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed].'" *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1144 (9th Cir. 2017); *see also Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) ("'The most direct way to show both that a statement was false when made and that the party making the statement knew that it was false is via contemporaneous reports or data, available to the party, which contradict the statement.'").

These are not immaterial puffery or opinions: adoption and utilization were RxSight's key public metrics. Mem. at 14; ¶39. Defendants made concrete, verifiable claims that cohort adoption "accelerated faster" (¶91(b)) and utilization "continues to grow" (¶99(b))—often in response to analyst questions—while citing "data" about these same metrics.[7]   *See Quality Sys.*, 865 F.3d at 1141, 1144 ("concrete description[s]" of "past or current facts" are not puffery or opinions); *Brookman v. Webtoon Ent. Inc.*, 2025 WL 3484589, at *3 (C.D. Cal. Dec. 2, 2025) (statements "capable of objective verification" held "not corporate puffery"); *Omnicare, Inc. v.*

---

[7]   *See, e.g.*, ¶¶86, 91(a)-(b), 92(a)-(b), 95, 99(b), 100(a)-(b), 106.

4908-8137-6920.v1

*Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183 (2015) (statements that pipeline was growing when it was not were actionable); *Glazer*, 63 F.4th at 770-71 (statements "made in response to specific questions asked by financial analysts" not puffery).

Regardless, even "'general statements of optimism,'" which these are not, "'may form a basis for a securities fraud claim' when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly," as here. *Quality Sys.*, 865 F.3d at 1143; ¶¶67-68, 122. And even if the statements were opinions (they are not), Plaintiff has sufficiently alleged—via Defendants' own admissions (¶¶67-68, 95, 122)—"'both that "the speaker did not hold the belief she professed" and that the belief is objectively untrue.'" *Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*, 2025 WL 2426714, at *5 (C.D. Cal. Aug. 20, 2025); *Omnicare*, 575 U.S. at 186.[8]

### 2. Defendants Admitted These Same Metrics Were Worsening and Flat When They Said the Opposite

On July 8, 2025, Defendants admitted that the same adoption and utilization metrics they had told investors were improving and growing for a year were actually slowing and flat during that time, stating: "[O]ur newer customers are adopting more slowly than our previous customers," causing slowing adoption "***over the last few quarters***," and that utilization was "pretty flat ***going back four quarters***," with each newer cohort down "more than the one before" since the first cohort. ¶122. RxSight was therefore "executing a commercial pivot" to fix inadequate field support, "enhance customer satisfaction," and improve adoption and utilization. *Id.* These

---

[8] Defendants' cases are inapposite. In *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1097 (9th Cir. 2022), sales were growing unlike here. The "'extremely strong[]'" and "'outstanding'" statements in *Kong v. Fluidigm Corp.*, 2023 WL 2134394, at *2 (9th Cir. Feb. 21, 2023), or "potential for growth" in *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014), are not capable of objective verification, unlike those here. *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616-17 (9th Cir. 2017) supports Plaintiff, who has adequately alleged actionable statements under *Omnicar*e.

4908-8137-6920.v1

admissions rendered Defendants' earlier positive statements misleading. *See* ¶¶97(h)-(i), 102(h)-(i), 107(h)-(i), 114(h)-(i).[9]

By alleging "'subsequent admissions'" contradicting Defendants' prior statements, Plaintiff adequately alleges falsity. *See Snap*, 2018 WL 2972528, at *7 (finding falsity "established where complaint allege[s] 'subsequent admissions' that were inconsistent with defendants' public statements"); *see also In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *16 (N.D. Cal. June 2, 2020) (same).

Defendants do not meaningfully dispute that these admissions contradict their earlier statements, arguing (in their scienter section) only that they lacked knowledge of falsity, relying on extrinsic documents to dispute facts. Mem. at 21-22.[10]  But courts may not "assume the truth of . . . incorporated document[s] . . . to dispute facts stated in a well-pleaded complaint" or "resolv[e] factual disputes at the pleading stage." *Khoja*, 899 F.3d at 1003; *see also Snap*, 2018 WL 2972528, at *7 (rejecting "alternative interpretation" of "admission" as improper fact dispute); Plaintiff's Response to Defendants' Notice of Incorporation by Reference and Request for Judicial Notice, filed concurrently herewith. Instead, courts "afford the allegations in the complaint reasonable inferences and presume their truth," not Defendants' competing fact arguments. *Funko*, 166 F.4th at 821.

Regardless, "four quarters" and "last few quarters" (¶122) is more than two; "[c]ontinues to grow" (¶99(b)) is incompatible with flat, which means not growing; and cohorts "accelerated faster" (¶91(b)) is incompatible with "more slowly than our previous customers" (¶122). Mem. at 21-22. Accordingly, Plaintiff adequately pleads falsity as to Defendants' cohort, adoption, and utilization statements.[11]

---

[9]  Rendering the following adoption, utilization, and cohort statements misleading: ¶¶86, 91(a)-(b), 92(a)-(b), 95, 99(b), 100(a)-(b), and 106.

[10]  "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

[11]  Plaintiff does not allege Defendants "'were aware of some signs of a slow down'" or "'fraud by hindsight,'" as in *In re SunPower Corp. Sec. Litig.*, 2018 WL 1863055,

- 10 -

### 3. Defendants Admitted Reviewing the Same Metrics They Said Were Improving When They Spoke

When they made the misleading statements about adoption and utilization, Defendants said they did so while "look[ing] internally at our data" concerning those same metrics. ¶100(b); *see, e.g.*, ¶92(b) ("***cohort is the one I look at is based upon year of install***"); ¶95 ("***[W]hat we have seen*** in our cohorts is all the cohorts continue to grow. . . . ***[W]e've seen*** an overall upward [utilization] trend."); ¶99 (same).

Thus, "[i]t is unclear what further facts plaintiff[] would need to plead to create a stronger inference that [Defendants] had access to information [they] discussed publicly." *Reese*, 747 F.3d at 572 ("[T]he inference that [defendant] did not have access to the corrosion data is directly contradicted by the fact that she specifically addressed it in her statement.").

### 4. Defendants' "Macro" and "Transitory" Explanations Concealed the Truth

When the concealed "adoption challenges" (¶18) and "flat" utilization (¶122) caused a sales downturn, Defendants called the downturn "transitory" (¶112(b)), blaming "abrupt changes in consumer sentiment" (¶112(a)) and "macroeconomic headwinds" (¶118(a)). Defendants also denied the Company was "anywhere near a saturation point" concerning adoption when analysts asked. ¶¶112(c), 118(e).

These explanations were misleading. Defendants admitted when making the positive statements about adoption and utilization that they did so while "look[ing] internally at our data." ¶100(b). And they further admitted in August 2025 that this data showed "adoption challenges" (¶18) for "the last few quarters" and "flat" utilization "going back four quarters" (¶122)—*i.e.*, in April and May 2025, when Defendants spoke. Thus, RxSight's problems were not "'temporary,'" nor caused by

---

at *3 (N.D. Cal. Apr. 18, 2018) and *Carr v. Zosano Pharma Corp.*, 2021 WL 3913509, at *12 (N.D. Cal. Sep. 1, 2021). Mem. at 22. Rather, Defendants' subsequent admissions of worsening adoption and flat utilization contemporaneous with their contrary statements establish falsity. ¶¶67-68, 91(a)-(b), 92(b), 95, 99(b), 100(a)-(b), 106, 121-122, 137-138.

- 11 -

"abrupt changes in consumer sentiment" or "'macro trends.'"  Mem. at 13, 21.  They were year-long, Company-specific issues of worsening adoption and flat utilization resulting from "customer satisfaction" problems.  ¶122.  Once Defendants chose to explain the slowdown, they had to disclose the Company-specific drivers.  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("[O]nce defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors as to what that backlog consisted of.").

These statements are not inactionable opinions.  Mem. at 13.  First, they contain embedded statements of untrue facts—that the declining sales were "transitory" and the result of "macro" factors, when Defendants' admissions show it was a year-long trend caused by slowing adoption and flat utilization from poor "customer satisfaction."  ¶¶67-68, 122; *see Omnicare*, 575 U.S. at 183, 185 (a statement of opinion is misleading if an embedded fact is untrue).  Second, Plaintiff has sufficiently alleged—as Defendants later admitted (¶¶67-68, 95, 122)—that "the speaker did not hold the belief she professed."  *Id.* at 186; *Rivian*, 2025 WL 2426714, at *5.  Third, the statements omitted material facts about worsening adoption and flat utilization that rendered any purported opinions misleading.  *Omnicare*, 575 U.S. at 186; *see also Khoja*, 899 F.3d at 1009.[12]

**B.  Plaintiff Adequately Pleads the Falsity of Defendants' Patient Outcomes and Clinical Advantage Statements**

**1.  Defendants Misled Investors About Patient Outcomes and Clinical Advantages**

Defendants repeatedly misrepresented patient results, telling investors, for example, that "***91% of LAL subjects*** achieved uncorrected binocular near vision . . . ***without glasses***" (¶73(a)), and that "90% of patients will . . . be ***able to read small***

---

[12]  Unlike in *Hessong v. Pinterest, Inc.*, 2021 WL 4339193, at *6 (N.D. Cal. Sep. 23, 2021) and *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 826 (C.D. Cal. 1998), Plaintiff here identifies specific internal information conveyed to management contemporaneously reflecting sustained adoption challenges and flat utilization that contradicted Defendants' representations.

4908-8137-6920.v1

*fonts without glasses*" (¶75(a)), while assuring "***LASIK-level refractive results***" (¶76(a)) without "***glare or halos***" (¶83(d)).[13]

These statements were misleading when made because they presented selective data from controlled studies that Defendants knew differed from real-world performance.[14] Study patients were carefully selected (perfect corneas, *e.g.*) such that the study results were not representative.[15] In real-world environments, Defendants knew that LALs did ***not*** provide optimal, uncorrected near vision in over 90% of patients—most required reading glasses.[16] Furthermore, the LAL+ (developed to improve the LAL's near vision limitations) created glares and halos.[17] Thus, RxSight's lenses were not more effective than standard IOLs for near vision and therefore uncompetitive considering cost.[18]

Wells Fargo partially revealed customer dissatisfaction in July 2024, reporting that high-volume cataract surgeons believed the technology "increase[d] costs without a significant improvement in clinical outcomes," was "too expensive," and "extremely time consuming." ¶89.[19] Internal RxSight Study Patient Customer Service Data and Doctor Readiness Reports sent to Kurtz and other executives, and the doctors-only ASCRS Ad Board, corroborated the customer satisfaction complaints partially

---

[13] *E.g.*, ¶¶73, 75-76, 78, 80, 83, 99(a).

[14] *E.g.*, ¶¶35, 42-45, 79(a), 87(a), 97(a), 102(a), 107(a), 114(a), 119(a).

[15] *Id.*

[16] *Id.*

[17] ¶¶44, 79(c), 87(c), 97(c), 102(c), 107(c), 114(c), 119(c).

[18] ¶¶42-45, 78, 79(c), 87(d), 97(d), 101, 102(d), 107(d), 114(d), 119(d).

[19] Defendants' inappropriate fact dispute about the number of cataract surgeons in the United States is misleading because RxSight focused on the high volume cataract surgeons Wells Fargo surveyed. Mem. at 11; Declaration of Diane M. Walters in Support of Defendants' Motion to Dismiss (ECF 47-2) ("Walters Decl."), Ex. 1 at 2; Walters Decl., Ex. 3 at 2.

- 13 -

disclosed in the July 10, 2024 Wells Fargo survey, which Defendants later admitted caused adoption and utilization problems.[20]

Defendants also misrepresented the clinical burdens and surgeon benefits. ¶¶88, 104(b).  When asked about the number of patient adjustments needed, Thunen said "*about 1.6* [plus] two lock-ins."  ¶88.  But Defendants knew from doctors that LALs usually required *three* adjustments per patient and two lock-ins—five hours total.[21]  Kurtz concealed this clinical burden while touting "$200 in additional revenue per LAL implanted for the practice."  ¶104(b).

Thus, Defendants' statements about patient outcomes, clinical advantages, and surgeon profits—concealing related burdens and dissatisfaction—gave "reasonable investor[s] the 'impression of a state of affairs that differs in a material way from the one that actually exists.'"  *Berson*, 527 F.3d at 985.

Defendants argue their statements were "accurate" (Mem. at 7-8), but "[e]ven if a statement is not false, it may be misleading if it omits material information." *Khoja*, 899 F.3d at 1008-09.  After Defendants chose "'to tout positive information to the market, they [we]re bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against positive information.'" *Id.* at 1009.[22]

---

[20]  ¶¶60, 79(b), 87(b), 97(b), 102(b), 107(b), 114(b), 119(b), 122.

[21]  ¶¶46-49, 52, 79(f), 87(g), 97(g), 102(g), 107(g), 114(g), 119(g).

[22]  Defendants' authorities are inapposite.  Mem. at 8-11; *see In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *7 (N.D. Cal. Oct. 21, 2020) (defendants there disclosed that the company's revenue growth rates had begun to decline); *Nektar*, 34 F.4th at 836 (challenging "statistical analysis" unlike here); *Curry v. Yelp Inc.*, 2015 WL 1849037, at *8 (N.D. Cal. Apr. 21, 2015) (customer complaints "*on their own*" do not establish falsity); *Mazzaferro v. Aruba Networks Inc.*, 2015 WL 456534, at *2 (N.D. Cal. Feb. 2, 2015) (attempting to infer company-wide market share losses solely on the loss of 3 customers out of more than 20,000).  *In re ICN Pharms., Inc. Sec. Litig.*, 299 F. Supp. 2d 1055, 1066 (C.D. Cal. 2004), is inapt because, unlike there, Plaintiff here alleges admissions of "customer satisfaction" problems and specific data and reports that "'make these representations false.'"

- 14 -

4908-8137-6920.v1

### 2. Plaintiff Pleads Sufficient Sources for Their Patient Outcome Allegations

Plaintiff pleads sufficient sources to support falsity, including Study Patient customer service data, Doctor Readiness reports, and doctor complaints on the ASCRS Ad Board (all of which went to Kurtz and senior executives), and related meetings where Defendants discussed this information.[23]  *See Rivian*, 2025 WL 2426714, at *2 (falsity adequately alleged when plaintiffs pleaded a "'backlog'" that defendants "'admittedly "closely watched"'").  Contrary to Defendants' arguments, "'[a] securities plaintiff is not required to have confidential witnesses as a source for the allegations in the complaint'" or "identify specific sales reports or documents to sufficiently plead scienter where the defendants allegedly had access to and review of such data."  *Rivian*, 2025 WL 2426714, at *2, *6; Mem. at 9-10; ¶¶5, 149-159.

Defendants argue that Plaintiff would have to speak with "hundreds of surgeons" to support their allegations.  Mem. at 9.  But "'[p]laintiff[] do[es] not need to prove at the pleading stage that [a] statement is false or misleading,'" and the Complaint's allegations have "'enough particularity to make the falsity or the misleading character of the statement plausible.'"  *Rivian*, 2025 WL 2426714, at *2.  Moreover, Defendants disclosed "customer satisfaction" problems on July 8, 2025, which they admitted caused undisclosed slowing adoption and flat utilization over the prior year.  ¶122.

### 3. Defendants' Statements that LALs Were "More Reliable" and "Better" Are Actionable

Defendants edit their statements in the May 2024 offering materials (¶83(c)) to argue they are non-actionable opinions.  *See* Mem. at 13.  But the full statement as pleaded represents that LALs were more reliable and consistent than other premium IOLs in delivering optimal vision without glasses.  Along with ¶104(a), it is thus an actionable opinion under *Omnicare* because Plaintiff alleges it contains untrue facts,

---

[23]  ¶¶79(b), 87(b), 97(b), 102(b), 107(b), 114(b), 119(b).

- 15 -

4908-8137-6920.v1

was not genuinely held, and omitted material facts rendering it misleading.  575 U.S. at 186; *see* 15 U.S.C. §77k; Mem. at 13.[24]

## VI.    PLAINTIFF ADEQUATELY ALLEGES AN ITEM 303 CLAIM

Defendants' failure to disclose the known trend of declining cohort adoption and flat utilization also renders certain of their SEC filings actionable under Item 303 of SEC Regulation S-K, 17 C.F.R. §299.303 ("Item 303").  ¶144; §V.A.2.-3, *supra*.[25] Item 303 requires disclosure of "known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. §229.303(b)(2)(ii); *see Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 265 (2024) ("Item 303 can support a Rule 10b-5(b) claim . . . if the omission renders affirmative statements made misleading.").

Defendants' July 8, 2025 admission of "adoption" challenges "for the last few quarters" and "flat" utilization (¶146) "going back four quarters" (¶122) shows these trends existed when they made statements that omitted them in their May 2024-February 2025 SEC filings.  Defendants also admitted contemporaneously that they made these statements while "look[ing] internally at our data."  ¶100(b).  These trends were apparent in RxSight's internal "Study Patient" data and Doctor Readiness reports sent to Kurtz and senior managers and discussed in meetings they attended.  ¶146. Thus, Defendants knew the omitted trends.

Defendants also knew these trends were reasonably likely to negatively impact RxSight's operations.  Adoption and utilization were key metrics RxSight disclosed concerning their sole product; indeed, these negative trends were already having a material, adverse effect on operations, as Defendants gradually disclosed in November

---

[24] Defendants' statement at ¶78(a) ("vision without glasses") is not stated as an opinion and is materially false.  15 U.S.C. §77k.

[25] RxSight's Forms 10-Q filed with the SEC on May 6, 2024, August 5, 2024, November 7, 2024 and May 7, 2025, and Form 10-K filed February 25, 2025.

- 16 -

2024, January 2025, April 2025, and July 2025. ¶¶6, 33, 39-40, 98-99, 103-106, 109-113, 117-118.

But in their May 6, 2024-May 7, 2025 SEC filings, Defendants stated that RxSight's increased sales resulted from "**strong adoption** of our RxSight system by practices and doctors." ¶145. Defendants are thus liable under Item 303 because their statements omitted the known worsening adoption and flat utilization trends likely to negatively impact operations making their "strong adoption" statements misleading. *See In re ON24, Inc. Sec. Litig.*, 2026 WL 45259, at *3 (9th Cir. Jan. 7, 2026) (knowledge of six-month trend "tracked" by leadership sufficiently alleged Item 303 violation).

## VII.   PLAINTIFF ADEQUATELY PLEADS SCIENTER

A complaint pleads a strong inference that defendants made false or misleading statements knowingly or with deliberate recklessness "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007). "The inquiry is **whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter**, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*

### A.   The Complaint Adequately Alleges Actual Knowledge

Plaintiff alleges Defendants spoke while knowing the undisclosed, adverse facts that made their statements materially misleading. ¶¶149-159; *see Ernst*, 641 F.3d at 1095 ("complaint can plead scienter by raising a strong inference that the defendant possessed actual knowledge").

#### 1.   Defendants' Admissions Establish Actual Knowledge

First, Defendants admitted on July 8, 2025 (2Q25) that "newer customers [were] adopting more slowly than our previous customers," causing slowing adoption "**over the last few quarters**," and "flat" utilization "**going back four quarters**." ¶122. Thus, these conditions existed since 2Q24, when Defendants began telling investors

- 17 -

the opposite for a year.  Defendants also then admitted previously-concealed "customer satisfaction" problems causing the slowing adoption and flat utilization. *Id.*

Second, Defendants admitted they had contemporaneous knowledge of these metrics through monitoring them: Thunen: "***I look internally at our [adoption] data by cohort*** . . . ." (¶158); Kurtz: "Utilization has grown over time and it continues to grow. . . . ***[W]e see*** those numbers going up" (¶99(a)).  *See, e.g.*, ¶¶86, 91(b), 92(b), 95, 99(b), 154, 159.

These admissions alone create a strong inference that Defendants possessed actual knowledge of falsity.[26]  *See In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *10 (N.D. Cal. Nov. 4, 2020) (subsequent admission of seeing a slowdown contemporaneous with statements to the contrary demonstrates scienter).  When a defendant references such data directly, as here, "[i]t is unclear what further facts plaintiffs would need to plead to create a stronger inference that she had access to information she discussed publicly."  *Reese*, 747 F.3d at 572; *see also Baron v. Hyrecar Inc.*, 2022 WL 17413562, at *13 (C.D. Cal. Dec. 5, 2022) ("'particularized allegations that defendants had actual access to the disputed information raise a strong inference of scienter'").

Third, Kurtz also admitted Defendants regularly surveyed customers: "***[W]e survey and we're very close to our customers***" and "***[w]e do a survey—customer survey every year***."  ¶¶155-157.  "By making repeated statements about customer feedback, Defendants held themselves out to investors as having personal knowledge about customer satisfaction."  *See Alghazwi v. Beauty Health Co.*, 801 F. Supp. 3d 982, 1003 (C.D. Cal. 2025) (strong inference of scienter alleged when defendants "had access to internal databases that tracked customer complaints, and these complaints were reported in detail to Defendants").

---

[26]  *See supra*, §V.A.

- 18 -

Plaintiff alleges with specificity how Defendants knew of the subsequently-disclosed "customer satisfaction" problems when they misled investors: customer surveys; complaints on the ASCRS Ad Board for doctors; customer complaints through RxSight's internal service lines; Doctor Readiness reports and "Study Patient" customer service data sent to Kurtz and senior managers; and related meetings. ¶¶122, 150-157. Thus, Defendants knew their statements were misleading "'via contemporaneous reports or data, available to [them], which contradict th[ose] statement[s].'" *Reese*, 747 F.3d at 572.[27]

Defendants' incorrect fact disputes about the truth of their admissions (Mem. at 21-22) cannot be resolved at this stage, and Plaintiff's allegations are afforded all reasonable inferences and presumed true. *Funko*, 166 F.4th at 821; §V.A.2, *supra*.

### 2.   Defendants' Adoption, Utilization, and Customer Satisfaction Statements Establish Actual Knowledge

Kurtz and Thunen repeatedly discussed RxSight System's adoption, utilization, and customer satisfaction data, "rendering it unlikely that [they] w[ere] not aware of it or the concerning aspects of the company's findings." *Reese*, 747 F.3d at 572.[28] Defendants' statements were also often made in response to analysts' "direct questioning," which is "sufficient to satisfy the actual knowledge analysis and allows the Court to infer scienter." *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1259-60 (W.D. Wash. 2009).[29]

---

[27] Defendants' scienter authorities lack the admissions alleged here showing Kurtz's and Thunen's actual knowledge. *Metzler*, 540 F.3d at 1066; *Intuitive Surgical*, 759 F.3d at 1062; *Carr*, 2021 WL 3913509, at *10; *Pittleman v. Impac Mortg. Holdings, Inc.*, 2009 WL 648983, at *3 (C.D. Cal. Mar. 9, 2009); *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 815 (N.D. Cal. 2019); *Kairalla v. Advanced Med. Optics, Inc.*, 2008 WL 2879087, at *11 (C.D. Cal. June 6, 2008); *Scandlon v. Blue Coat Sys., Inc.*, 2013 WL 308879, at *4 (N.D. Cal. Jan. 25, 2013); *M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2017 WL 5635424, at *14 (C.D. Cal. Aug. 20, 2017).

[28] *See* ¶¶73, 75-76, 78, 80, 85-86, 91-92, 95, 99, 104, 106, 111-112, 117-118, 122.

[29] *See* ¶¶75, 91, 95, 99, 113, 118(e).

- 19 -

### 3. Defendants' "Study Patient" Reward Program Supports an Inference of Scienter

Plaintiff adequately alleges that Defendants knowingly used RxSight's "Study Patient" reward program to conceal dissatisfaction and artificially inflate adoption and utilization by paying doctors $20,000 each after 40 eye adjustments. ¶152; *see Plumbers & Pipefitters Loc. Union #295 Pension Fund v. CareDx, Inc.*, 2025 WL 556283, at *14 (N.D. Cal. Feb. 18, 2025) ("the TAC alleges that Defendants knew that the kickbacks boosted the testing services revenue . . . creat[ing] an inference of scienter").

### B. The Complaint Satisfies the Core Operations Doctrine

When metrics are central to a company's business, as here, it is "absurd" to conclude that senior executives were not closely monitoring them. *See Funko*, 166 F.4th at 832 (reversing after finding scienter under core operations). Defendants cannot meaningfully dispute core operations, as the RxSight System was the small Company's sole product. ¶¶160-162. Defendants also repeatedly emphasized that adoption and utilization metrics drove RxSight's financial performance and cited them when making the alleged misleading statements.[30] *See Hyrecar*, 2022 WL 17413562, at *16 (core operations contributed to strong inference of scienter when allegations concerned "an important part of [defendant's small] business" and "executives had access to [company] database").

Kurtz and Thunen also oversaw the Company's business strategy—which depended entirely on the RxSight System's sales, adoption, and utilization—controlled the content of SEC filings, and signed Sarbanes-Oxley Act of 2002 certifications. ¶¶160, 164. Courts in this Circuit "consider a senior executive's role in a company" (*In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021)), to infer "'that facts critical to a business's core operations . . . are known to a company's key

---

[30] ¶¶6, 38-40, 86, 91, 99, 104-106, 112, 122.

- 20 -

officers'" (*Jaeger v. Zillow Grp., Inc.*, 644 F. Supp. 3d 857, 874 (W.D. Wash. 2022)).[31]

### C.   Insider Sales and the Secondary Public Offering Support a Strong Inference of Scienter

Insider stock sales support a strong inference of scienter, particularly when they are "inconsisten[t] with . . . prior trading patterns" and demonstrate suspicious timing. *Hyrecar*, 2022 WL 17413562, at \*15 ($5.2 million and $1.2 million in insider trades support a strong inference of scienter when no prior sales and right before the first alleged disclosure).

Here, ***all*** of Kurtz's and Thunen's lifetime RxSight trades—$7.6 million and $8.5 million, respectively, and 100% of their total reported lifetime proceeds—were during the Class Period.  ¶¶166-168; *see City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 2022 WL 4491093, at \*13 (S.D. Cal. Sep. 27, 2022) ("absence of any sales of stock prior to the class period supports an inference . . . of scienter"); *see also Hyrecar*, 2022 WL 17413562, at \*15 ("courts should give 'less weight' to the fact sales 'may represent a small portion of the defendant's holdings' if the amount of money made from the sale is sufficiently high in magnitude").  Kurtz's sales were all before the "first alleged corrective disclosure" (stopping only a month before it), and Thunen's were all before the second alleged disclosure (of five).  *Hyrecar*, 2022 WL 17413562, at \*15; ¶¶126-138, 166.[32]

---

[31]   Defendants fail to cite recent Ninth Circuit authority on core operations in *Funko*, published before their motion.  Regardless, Plaintiff's allegations satisfy the core operations scienter standards in *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063-64 (9th Cir. 2014) (contributing holistically, pleading actual access, and that it would be """"absurd"""" to suggest management lacked knowledge).

[32]   Defendants' authorities are not contrary.  Mem. at 19-20; *see Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009) (no trading history alleged); *Metzler*, 540 F.3d at 1067 (sales before investigation and "sold in a manner consistent with their pre-Class Period sales"); *Lipton*, 284 F.3d at 1037 (only 1.4%).  *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001), helps Plaintiff because Defendants here were "liquidating their holdings at [the top of the market] . . . even as they 'talked it up.'"

- 21 -

Defendants cannot defeat scienter by introducing extrinsic materials regarding Rule 10b5-1 trading plans. Mem. at 18-20; *Khoja*, 899 F.3d at 998. Indeed, "the fact of the 10b5-1 trading plan, without more, is insufficient to negate the effect of otherwise suspicious sales." *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *16 (C.D. Cal. Oct. 1, 2013); Mem. at 20.[33]

The $115 million secondary offering during the Class Period further contributes to the strong inference of scienter. ¶168; *see Smyth v. China Agritech, Inc.*, 2013 WL 12145047, at *4 (C.D. Cal. Sep. 26, 2013) (completing an equity offering at artificially-inflated prices contributes to scienter).[34]

Considering the Complaint's allegations holistically in the light most favorable to Plaintiff, it alleges a strong inference of scienter. Defendants' contrary inference, "'[h]onest optimism followed by disappointment,'" relies on improper fact disputes and is simply less plausible. Mem. at 23.[35]

---

[33] Thus, Defendants' reliance on *Curry v. Yelp Inc.*, 875 F.3d 1219, 1226-27 n.2 (9th Cir. 2017), *Metzler*, 540 F.3d at 1067 n.11, and *Park v. GoPro, Inc.*, 2019 WL 1231175, at *23 (N.D. Cal. Mar. 15, 2019) is unavailing. Mem. at 19-20.

[34] Defendants' motive cases are inapposite. Mem. at 19-21; *see In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) (predates *Tellabs* and was expressly limited by *S. Ferry LP v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) as "too demanding and focused too narrowly"); *Okla. Firefighters Pension & Ret. Sys. v. Ixia*, 2015 WL 1775221, at *35 (C.D. Cal. Apr. 14, 2015) (same); *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (no offering alleged); *In re Arrowhead Pharms., Inc. Sec. Litig.*, 782 F. App'x 572, 575 (9th Cir. 2019) (offering allegations "'***without more***'" insufficient).

[35] Because Plaintiff adequately pleads a Rule 10b-5(b) claim, they state a claim under §20(a). *Rivian*, 2025 WL 2426714. at *7, Mem. at 23.

- 22 -

4908-8137-6920.v1

## VIII. CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

DATED: March 20, 2026

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
LAURA ANDRACCHIO
CHRISTOPHER R. KINNON
ASHLEY G. PYLE


                    s/ Christopher R. Kinnon
          CHRISTOPHER R. KINNON

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
landracchio@rgrdlaw.com
ckinnon@rgrdlaw.com
apyle@rgrdlaw.com

Lead Counsel for Lead Plaintiff

WATKINS, PAWLICK, CALATI
  & PRIFTI, PC
LAUREN CRUMMEL
1423 E. Twelve Mile Road
Madison Heights, MI  48071
Telephone:  248/658-0797
248/658-0801 (fax)
lcrummel@wpcplaw.com

Additional Counsel

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Lead Plaintiff Michigan Laborers' Pension Fund certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 20, 2026

                    s/ Christopher R. Kinnon
          CHRISTOPHER R. KINNON

- 23 -

4908-8137-6920.v1