GREGORY L. WATTS, State Bar No. 197126
Email: gwatts@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 South State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510
Facsimile: (866) 974-7329

DIANE M. WALTERS, State Bar No. 148136
Email: dwalters@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (866) 974-7329

*Attorneys for Defendants*
*RxSight, Inc., Ron Kurtz, and Shelley*
*Thunen*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| In re RxSIGHT, INC. SECURITIES LITIGATION | Case No. 8:25-cv-01596-FWS-KES |
| | CLASS ACTION |
| This Document Relates To: | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| ALL ACTIONS. | |
| | Date: May 28, 2026 |
| | Time: 10:00 a.m. |
| | Courtroom: 10D, 10th Floor |
| | Before: Hon. Fred W. Slaughter |

REPLY MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-CV-01596-FWS-KES

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT........................................................................................................2

I.  THE CAC IS SUBJECT TO THE PSLRA'S HEIGHTENED PLEADING REQUIREMENTS ................................................................2

II.  PLAINTIFF FAILS TO PLEAD FALSITY ................................................3

    A.  Plaintiff's Catalog of Conclusions Fails to Satisfy the PSLRA. ..........3

        1.  The Statements Regarding Study and Clinical Data Are Accurate Statements of Historical Fact. ....................................5

        2.  The Conclusory Allegations Regarding Patient Results and Alleged Doctor Dissatisfaction Do Not Plead Falsity................5

        3.  Plaintiff's "Adjustments" Allegations Fail to Plead Falsity.......8

        4.  The Unsupported Market Saturation Allegations Fail. ..............8

        5.  The Sparse Field Support and "Rebate" Allegations Are Deficient.................................................................................8

    B.  Many of the Statements Are Non-Actionable as a Matter of Law. ......9

        1.  Many Statements Are Non-Actionable Opinions......................9

        2.  Many Statements Are Non-Actionable Puffery. ....................10

III.  THE ITEM 303 ALLEGATIONS DO NOT STATE A CLAIM ................11

IV.  PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ..............................................................................................12

    A.  No Contemporaneous, Contradictory Knowledge Is Alleged. ...........12

        1.  The Generic Chat Board and Internal Document Allegations Fall Far Short of Satisfying the PSLRA................13

        2.  The Data Monitoring Allegations Fail to Plead Scienter. ........13

    B.  The "Motive" Allegations Do Not Provide the Missing Inference of Scienter. ..............................................................................................14

        1.  The Stock Sales Were Neither Unusual Nor Suspicious..........14

        2.  The Secondary Offering Fails to Establish Scienter.................16

    C.  The July 2025 Statements Do Not Constitute "Admissions." ............16

D.    The CAC Does Not Support a Core Operations Inference.................19

E.    The CAC Allegations Fail Both Individually and Holistically. .........20

CONCLUSION................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008)...............................................................................9

*Cheng v. Activision Blizzard, Inc.*,
2023 WL 2136787 (C.D. Cal. Jan. 22, 2023),
*aff'd*, 2024 WL 208142 (9th Cir. Jan. 19, 2024)..............................................3

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*,
2023 WL 155861 (D. Ariz. Jan. 11, 2023).......................................................15

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) ...........................................................15

*Constr. Laborers Pension Tr. of Greater St. Louis v. Funko, Inc.*,
166 F.4th 805 (9th Cir. 2006)...........................................................................19

*Glazer Cap. Mgmt., L.P. v. Forescout Techs, Inc.*,
63 F.4th 747 (9th Cir. 2023)...............................................................................4

*In re Apple Inc. Sec. Litig.*,
2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) ...................................................17

*In re Cloudera, Inc. Sec. Litig.*,
121 F.4th 1180 (9th Cir. 2024)....................................................................3, 17

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)..........................................................................10

*In re ON24, Inc. Sec. Litig.*,
2026 WL 45259 (9th Cir. Jan. 7, 2026) ...........................................................11

*In re Quality Systems, Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017).....................................................................10, 11

*In re Rigel Pharms., Inc. Sec. Litig.*,
2010 WL 8816155 (N.D. Cal. Aug. 24, 2010),
*aff'd*, 697 F.3d 869 (9th Cir. 2012) ...............................................................6, 7

*In re Snap Inc. Sec. Litig.*,
2018 WL 2972528 (C.D. Cal. June 7, 2018) ...................................................17

*In re The Trade Desk, Inc. Sec. Litig.*,
    2026 WL 790911 (C.D. Cal. Mar. 17, 2026) ................................................... 16

*In re Twitter, Inc. Sec. Litig.*,
    506 F. Supp. 3d 867 (N.D. Cal. 2020),
    *aff'd sub nom. Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022) .......................................................................... 17

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ................................................................... 13, 15

*Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*,
    2025 WL 2426714 (C.D. Cal. Aug. 20, 2025) ................................................... 7

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ........................................................................ 19

*Lipton v. Pathogenesis Corp.*,
    284 F.3d 1027 (9th Cir. 2002) ....................................................................... 15

*Lowe v. Tandem Diabetes Care Inc.*,
    2024 WL 1898473 (S.D. Cal. Apr. 30, 2024) .................................................... 8

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ....................................................................................... 3

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ....................................................................... 12

*N.Y.C. Fire Dept. Pension Fund v. Snowflake, Inc.*,
    --- F. Supp. 3d ----, 2026 WL 446309 (N.D. Cal. Feb. 17, 2026) .................... 7

*Ng v. Berkeley Lights, Inc.*,
    2024 WL 695699 (N.D. Cal. Feb. 20, 2024) ................................................... 14

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
    2012 WL 1868874 (N.D. Cal. May 22, 2012),
    *aff'd*, 759 F.3d 1051 (9th Cir. 2014) .............................................................. 13

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) .............................................................. 11, 13, 20

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ........................................................................ 14

*Or. Pub. Emps.' Ret. Fund v. Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014)........................................................................... 10

*Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*,
   39 F.4th 1092 (9th Cir. 2022).........................................................................11

*Scandlon v. Blue Coat Sys., Inc.*,
   2013 WL 5313168 (N.D. Cal. Sept. 23, 2013) ............................................... 17

*City of Dearborn Heights Act 345 Police & Fire Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017)............................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...............................................................................*passim*

*Welgus v. TriNet Grp., Inc.*,
   2017 WL 6466264 (N.D. Cal. Dec. 18, 2017),
   *aff'd*, 765 F. App'x 239 (9th Cir. 2019).........................................................15

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
   29 F.4th 611 (9th Cir. 2022)..............................................................................7

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)......................................................................12, 13

## STATUTES

15 U.S.C. § 78u-4(b)(1)...................................................................................... 3, 4

15 U.S.C. § 78u-4(b)(3)(A) ....................................................................................3

## RULES

Fed. R. Civ. P. 8......................................................................................................2

REPLY MEM. ISO MOTION TO DISMISS          -v-
CASE NO. 8:25-CV-01596-FWS-KES

Defendants submit this reply in support of their motion to dismiss, ECF No. 47 ("Opening Brief" or "MTD") and in reply to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, ECF No. 50 ("Opposition" or "Opp.").

## PRELIMINARY STATEMENT

Plaintiff's Opposition, like the consolidated amended complaint, ECF No. 46 ("CAC" or "¶_"), rests entirely on unsupported conclusions. Because the CAC falls far short of complying with the PSLRA's stringent pleading requirements, Plaintiff glosses over these statutory requirements and attempts to misdirect focus by arguing that Defendants are improperly "demand[ing] evidence." Plaintiff is incorrect. Congress, not Defendants, mandated that plaintiffs bringing securities fraud claims must plead particularized facts to withstand dismissal under the PSLRA.

The PSLRA's heightened pleading requirements "are among the control measures Congress included in the PSLRA" and "require plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (citation omitted). Neither the CAC nor the Opposition identifies any such facts.

Plaintiff does not dispute that the CAC lacks any confidential witness allegations, nor does Plaintiff point to any allegations identifying specific contemporaneous, contradictory information provided to Dr. Kurtz or Ms. Thunen prior to the making of any challenged statement. Indeed, the only purportedly contradictory document for which Plaintiff provides a date is an anecdotal survey by Wells Fargo of only 50 surgeons. Unfortunately for Plaintiff, the Wells Fargo survey—which indisputably reflects that *76%* of the surgeons surveyed were either already using the RxSight system or had plans to adopt it in the next 24 months—refutes Plaintiff's claims that the system was "uncompetitive."

Unable to point to any particularized, contemporaneous facts in the CAC

showing that any challenged statement was false when made, much less deliberately so, Plaintiff instead attempts to plead fraud by hindsight based on mischaracterizations of statements made at the end of the class period, *i.e.*, **after** the challenged statements were made. Throughout the Opposition, Plaintiff repeatedly and baselessly claims that, on July 8, 2025, Dr. Kurtz and Ms. Thunen admitted that they engaged in a fraudulent scheme to deceive investors throughout a nearly two-year class period. Plaintiff is wrong. No such admission was made.

Statements made in ***July 2025*** do not constitute contemporaneous facts with respect to any of the earlier challenged statements, which extend back to ***November 2023***. The suggestion that what Defendants knew in July 2025 was known nearly two years earlier, or even months earlier, defies credulity. In any event, as the CAC reflects, Defendants ***disclosed*** disappointing LDD sales, the most critical component of ***adoption***, during the class period. With respect to ***utilization***, Defendants ***disclosed*** slower 2024 annual cohort utilization ramping in early April 2025, within days of the first quarter of full 2024 cohort data being available. Moreover, Plaintiff's "admissions" theory rests on a false premise: Defendants did not state on July 8, 2025—or at any other time—that adoption or utilization issues were due to "problems" with "customer satisfaction."

Plaintiff's failure to allege—as required by the PSLRA—any specific, internal ***contemporaneous*** facts purportedly known to Defendants that rendered each challenged statement deliberately false when made is fatal to Plaintiff's fraud claims. The CAC should be dismissed.

## ARGUMENT

## I.   THE CAC IS SUBJECT TO THE PSLRA'S HEIGHTENED PLEADING REQUIREMENTS

Plaintiff erroneously suggests that the CAC need only satisfy Federal Rule of Civil Procedure 8, asserting that "[p]laintiff need only allege 'enough facts to state a claim to relief that is plausible on its face'" to "defeat a motion to dismiss." Opp.

REPLY MEM. ISO MOTION TO DISMISS
CASE NO. 8:25-CV-01596-FWS-KES
-2-

at 5 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011)). Plaintiff disregards that the cited footnote in *Matrixx* (Opp. at 5) does not address the PSLRA's pleading requirements for falsity and scienter. *Matrixx*, 563 U.S. 27, 45 n.12. The Supreme Court made clear elsewhere in *Matrixx* that Section 10(b) fraud claims are subject to the PSLRA's heightened pleading requirements for falsity and scienter. *Id.* at 38 n.4, 48; *see also Tellabs*, 551 U.S. at 319. Where, as here, the PSLRA's statutory requirements are not met, the CAC must be dismissed. *See Cheng v. Activision Blizzard, Inc.*, 2023 WL 2136787, at *4 (C.D. Cal. Jan. 22, 2023) ("A court must dismiss a private securities fraud action seeking money damages if the complaint fails to meet the [PSLRA's] pleading requirements.") (citing 15 U.S.C. § 78u-4(b)(3)(A)), *aff'd*, 2024 WL 208142 (9th Cir. Jan. 19, 2024).

## II.   PLAINTIFF FAILS TO PLEAD FALSITY

The "PSLRA prescribes an 'exacting' standard," for pleading falsity, and a "'litany of alleged false statements unaccompanied by the pleading of specific facts indicating why those statements were false,' is insufficient." *In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1187 (9th Cir. 2024) (citation omitted). "[S]pecific facts" showing the falsity of any challenged statement are precisely what is missing in the CAC. *Id.*; *see* MTD at 5-14.

### A.   Plaintiff's Catalog of Conclusions Fails to Satisfy the PSLRA.

Plaintiff alleges that over a nearly two-year period Defendants conspired to fraudulently make false and misleading statements regarding product efficacy, adoption, utilization rates, doctor ROI, cohort growth, seasonality, market saturation, the premium IOL market, consumer sentiment, and macroeconomic trends. MTD at 5-14. Instead of pleading particularized, contemporaneous facts as to each statement, Plaintiff simply repeats a catalog of conclusions that falls woefully short of satisfying the PSLRA's strict pleading requirements. *Id*.

Plaintiff argues that identifying the challenged statements and listing conclusory "reasons" "satisfies the PSLRA." Opp. at 6. But where, as here,

REPLY MEM. ISO MOTION TO DISMISS          -3-
CASE NO. 8:25-CV-01596-FWS-KES

Plaintiff's allegations are based upon "information and belief" (¶5), Plaintiff must "state with particularity all facts on which that belief is formed."  MTD at 5; 15 U.S.C. § 78u-4(b)(1).  Plaintiff's vague conclusions do not constitute "facts," much less particularized facts.  MTD at 5-14.

The *Glazer* decision upon which Plaintiff relies (Opp. at 6, 9) highlights the deficient nature of the allegations here.  *Glazer Cap. Mgmt., L.P. v. Forescout Techs, Inc.*, 63 F.4th 747 (9th Cir. 2023).  Unlike the conclusory allegations in the CAC, the complaint in *Glazer* included allegations from twenty confidential witnesses ("CWs") who were former employees of the defendant company, including a CW the plaintiffs described as a former "senior executive" who (with other CWs) claimed the company's pipeline included "illusory" deals.  63 F.4th at 771-72.  The falsity analysis in *Glazer* regarding challenged pipeline statements turned on "the level of detail of the CW statements, the number of CWs, and the consistency between the CW's statements of subjective opinion and those of verifiable fact"— *i.e.*, the holding was premised on the type of allegations that are utterly lacking in the CAC.  *Id.* at 772.

Plaintiff's attempts to distinguish Defendants' cited authority also serve to emphasize precisely what is missing in the CAC.  In a footnote addressing three cases cited by Defendants, Plaintiff concedes that the PSLRA requires Plaintiff to plead facts "tethering" the allegedly misleading statements to "***specific contemporaneous facts demonstrating falsity***."  Opp. at 6 n.5 (emphasis added).  Neither the Opposition nor the CAC identifies any such tethered ***contemporaneous*** facts.  *See* MTD at 5-14.  In attempting to distinguish other cases (Opp. at 12 n.12), Plaintiff baldly asserts that the CAC "identifies specific internal information conveyed to management contemporaneously reflecting sustained adoption challenges and flat utilization that contradicted Defendants' representations."  *Id.* Not surprisingly, this claim is unaccompanied by any citations to the CAC.  That is because the CAC does not identify ***any*** such "specific internal information conveyed

REPLY MEM. ISO MOTION TO DISMISS          -4-
CASE NO. 8:25-CV-01596-FWS-KES

to management contemporaneously." *Id.* For example, what specific, contradictory information was provided to Dr. Kurtz before the November 9, 2023 challenged statements that allegedly rendered them false or misleading? ¶73. The CAC does not say. This same question remains unanswered in the CAC as to each and every challenged statement. ¶¶71-120.[1]

### 1.    The Statements Regarding Study and Clinical Data Are Accurate Statements of Historical Fact.

Plaintiff does not dispute that Defendants' statements regarding past FDA studies and clinical data were accurate. MTD at 7-8; Opp. at 14. Instead, Plaintiff contends that these accurate statements were nevertheless misleading because Defendants purportedly knew that the historical data "differed from real world performance," with "most" patients allegedly still needing to wear glasses and experiencing "glares and halos." Opp. at 13. The only allegations cited in support of Plaintiff's "real world performance" argument, however, are the July 2024 Wells Fargo survey, vague chat board allegations, and generic internal report allegations (Opp. at 13-14), none of which support Plaintiff's fraud claims, as shown in the Opening Brief and below. MTD at 6-11.

### 2.    The Conclusory Allegations Regarding Patient Results and Alleged Doctor Dissatisfaction Do Not Plead Falsity.

Both the CAC and the Opposition rely heavily on an anecdotal Wells Fargo survey, and both mischaracterize it. *Compare* Opp. at 1, 4, 7, 12-14, *with* MTD at 11. Notably, Plaintiff does not dispute that *76%* of the 50 surgeons surveyed were either already using the RxSight system or had plans to adopt it in the next 24 months. MTD at 11. That fact alone refutes Plaintiff's baseless claims that the survey showed that "*many* surgeons had no plans to adopt" the RxSight technology

---

[1] Nor do mischaracterized statements made at the end of the class period constitute *contemporaneous* facts as to any earlier challenged statement. *Infra* Section IV.C.

(¶89 (emphasis added)), and the RxSight system purportedly was "uncompetitive considering costs" (Opp. at 12-14).  That a small number of the 50 doctors surveyed indicated that the RxSight system was too expensive or burdensome for their respective practices (MTD at 11) does not support Plaintiff's sweeping claims that "***many*** surgeons had no plans to adopt" the system or found it to be overly expensive or burdensome.  *Id.* at 10-11 (emphasis added).[2]  Nor does the Wells Fargo survey support Plaintiff's claims that surgeons were not adopting the RxSight system due to allegedly poor patient outcomes.  Exhibit 9, ECF No. 47-11, at 11; Opp. at 12-14.

Other than the Wells Fargo survey, which actually refutes Plaintiff's claims, the CAC offers only conclusory allegations regarding customer or patient complaints.  MTD at 9-10.  Indeed, the CAC does not allege how many customers or patients Plaintiff purportedly spoke with prior to filing this action, much less claim that Plaintiff somehow communicated with "most" of RxSight's patients or doctors across the United States.  *Id.*; *see, e.g.*, ¶87(a) (alleging "most patients were not obtaining 'glasses-free vision'"), ¶87(b) (alleging "doctors complained regularly to Defendants"), ¶87(c) (glares and halos), ¶87(d) (cost), ¶87(g) (burden).  What is the source of information for Plaintiff's "most patients" claim?  How many doctors purportedly "complained regularly" to Dr. Kurtz or Ms. Thunen, what was the subject of the complaints, and when were they made?  More importantly, how did the unidentified communications render any statement false or misleading?  Plaintiff's conclusory claims about patient outcomes and alleged customer dissatisfaction lack the detail required by the PSLRA.  MTD at 6-12; *In re Rigel Pharms., Inc. Sec. Litig.*, 2010 WL 8816155, at *12 (N.D. Cal. Aug. 24, 2010) (finding that plaintiff failed to plead falsity: "Plaintiff does not point to any internal document

---

[2] Even if one considers Plaintiff's contention that the universe of surgeons should be a subset of the referenced 9,000 surgeons (MTD at 11) that includes only "high volume cataract surgeons" (Opp. at 13 n.19), Plaintiff cannot credibly contest that 50 surgeons is a small sample size.  In any event, even the small sampling contradicts Plaintiff's claims.  MTD at 11.

REPLY MEM. ISO MOTION TO DISMISS          -6-
CASE NO. 8:25-CV-01596-FWS-KES

or statement from confidential witness[es] to support an inference that Defendants knew, when they made such statements, that their partnership prospects were not on track[.]"), *aff'd*, 697 F.3d 869 (9th Cir. 2012).

Lacking any specific facts from individuals with knowledge of RxSight's business during the class period, Plaintiff relies on vague "chat board" allegations and generic internal report allegations, neither of which satisfy the PSLRA's stringent requirements. MTD at 9-11. The CAC does not reference any specific "chat" messages—much less identify the content of any message—that rendered any challenged statement false when made. Opp. at 13-14. Because Plaintiff fails to plead any particularized facts showing that the unspecified chat board complaints "are representative of the companywide customer experience," Plaintiff's "allegations do not plausibly allege, with particularity, that enough [customers]" made complaints "to render defendants' statements false or misleading." *N.Y.C. Fire Dept. Pension Fund v. Snowflake Inc.*, --- F. Supp. 3d ----, 2026 WL 446309, at *7 (N.D. Cal. Feb. 17, 2026).

Plaintiff's vague internal report allegations are equally deficient. MTD at 9-10. Merely assigning titles to purported internal reports (Opp. at 13) without specifying any dates, contradictory content, or facts showing that Dr. Kurtz or Ms. Thunen received the reports prior to making a challenged statement, does not satisfy the PSLRA. MTD at 9-11; *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022) ("allegations of 'fraud must be accompanied by the who, what, when, where, and how of the misconduct charged'") (citation omitted).[3]

_____

[3] Plaintiff's reliance on *Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*, 2025 WL 2426714 (C.D. Cal. Aug. 20, 2025), is misplaced. There, the court found the complaint's allegations regarding internal backlog preorder information to be sufficient where the defendants publicly "'admitted[]'" that they "'closely watched'" the backlog preorders, "along with cancellation rates and macroeconomic factors – 'daily.'" *Id.* at *2. In addition, during the class period, Rivian stopped reporting the touted backlog preorder figures and never reported cancellation rates. *Id.* Unlike in *Rivian*, Plaintiff's vague allegations regarding internal reports are devoid of any detail, MTD at 10.

### 3. Plaintiff's "Adjustments" Allegations Fail to Plead Falsity.

Plaintiff claims that Ms. Thunen's June 18, 2024 statement about post-operative adjustments "running about 1.6" and "two lock-ins" was false (¶88; Opp. at 14 & n.21) because unidentified "surgeons" allegedly "were finding" that LALs required "up to three adjustments and two lock-ins" (¶48). Plaintiff fails to plead *any* factual sources for this conclusory assertion and thus fails to plead falsity.

In the Opposition, Plaintiff makes a new and nonsensical assertion that Dr. Kurtz "concealed this clinical burden while touting" additional revenue for practices. Opp. at 14 (citing ¶104(b)). This new claim is not alleged in the CAC, and it cannot be amended by the Opposition Brief. *See Lowe v. Tandem Diabetes Care Inc.*, 2024 WL 1898473, at *7 n.2 (S.D. Cal. Apr. 30, 2024).

### 4. The Unsupported Market Saturation Allegations Fail.

The Opposition does not point to a single fact in the CAC supporting Plaintiff's repeated claims that RxSight's market was "saturated." MTD at 11-12. Plaintiff's conclusory allegations thus lack the particularity necessary to support Plaintiff's claims of falsity as to any challenged statement. *Id.*

### 5. The Sparse Field Support and "Rebate" Allegations Are Deficient.

Like the CAC, the Opposition also does not point to a single fact showing that "RxSight lacked adequate field support to drive adoption and utilization." MTD at 12. Plaintiff thus fails to support the CAC's repeated claims that allegedly inadequate field support rendered any statement misleading when made. *Id.* The Opposition also does not dispute that the CAC lacks facts showing the existence of any "rebates" (*e.g.*, ¶ 87(j)), much less that "rebates" artificially propped up revenues, adoption, or utilization. MTD at 12.[4]

---

[4] Plaintiff's conclusory assertions regarding internal "data" (Opp. at 11) also lack the requisite details and fail to plead falsity.

REPLY MEM. ISO MOTION TO DISMISS     -8-
CASE NO. 8:25-CV-01596-FWS-KES

**B.    Many of the Statements Are Non-Actionable as a Matter of Law.**

**1.    Many Statements Are Non-Actionable Opinions.**

Many of the challenged statements are non-actionable, optimistic opinion statements related to product efficacy, adoption, utilization, growth trends, headwinds, and market saturation. MTD at 12-13 (identifying statements). In order to plead the falsity of an opinion statement, Plaintiff must plead facts showing: (i) Defendants did not genuinely believe the statements, and they were objectively untrue; (ii) the opinions contained embedded statements of untrue facts; or (iii) material omitted facts were known to Defendants that rendered the statements misleading when made and read in context. MTD at 13 (citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616-17 (9th Cir. 2017)). No such facts are pleaded as to any of the challenged opinion statements.[5]

Contrary to Plaintiff's assertions, the CAC does not plead any facts suggesting that the opinion statements expressing the beliefs that LALs offer a "more reliable" (¶83(c)) or "better approach" (¶104(a))—which were prefaced with "we believe"— "contain[ed] untrue facts," were not genuinely held, or omitted material facts rendering them misleading. Opp. at 15-16.[6] Indeed, the CAC does not contain any

---

[5] *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982 (9th Cir. 2008) (Opp. at 12, 14) is inapposite. In *Berson,* the court found that the plaintiff sufficiently pleaded that the defendants' statements "tout[ing] backlog" were misleading based on detailed allegations from confidential witnesses claiming that the backlog still included future revenue from multiple customers who had sent the company stop-work orders, "which halted tens of millions of dollars of work[.]" 527 F.3d at 984-985, 987. No such similar facts are alleged in the CAC.

[6] Plaintiff also erroneously suggests that an opinion statement made at a March 13, 2024 conference was made in RxSight's May 2024 registration statement. *Id.* at 16 n.24 (citing ¶78(a) and the Securities Act of 1933). In any event, Plaintiff fails to plead any facts showing that the March 2024 opinion statement regarding the LALs adjustability attaining "better vision without glasses" (¶78(a)) or the May 2024 opinion statement about "believe[ing]" that competitors "often" fail to "deliver on patient's expectations for quality vision across a range of distances without glasses" (¶83(a)) were knowingly false or not genuinely believed.

facts showing that competing IOLs are more reliable or provide better vision without glasses.

Unable to cite facts in the CAC showing that any opinion statement was knowingly false or not genuinely believed, Plaintiff instead claims that none of the statements was an opinion because Defendants purportedly admitted at the end of the class period that they knowingly issued false statements for a nearly two-year period. *E.g.*, Opp. at 7-11 (adoption and utilization opinion statements); *id.* at 11-12 (opinion statements regarding transitory downturn, consumer sentiment, macroeconomic headwinds, and saturation). As shown in the Opening Brief and below, Plaintiff mischaracterizes the July 8, 2025 statements, and no admissions were made. MTD at 21-22; *infra* Section IV.C.

### 2.      Many Statements Are Non-Actionable Puffery.

Many of the challenged statements are nothing more than general expressions of corporate optimism regarding growth and demand, *i.e.*, the same type of "puffery" statements that the Ninth Circuit repeatedly has held are not actionable. MTD at 14 (citing statements and cases); *see also Or. Pub. Emps.' Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014) (puffing statements not actionable); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("vague statements of optimism" not actionable).

Relying on *In re Quality Systems, Inc. Securities Litigation*, 865 F.3d 1130 (9th Cir. 2017) (Opp. at 8, 9), Plaintiff argues that the challenged statements were not puffery because Defendants purportedly made "concrete, verifiable claims" about continued growth in response to analysts' questions. The contrast with the detailed allegations in *Quality* undercuts, rather than supports, Plaintiff's argument. In *Quality*, a board member resigned after accusing the CEO and Chairman of "securities laws violations." 865 F.3d at 1138. "[T]hree high-level officers" claimed, on the basis of direct interactions, that the defendants knowingly concealed a "steep decline" in sales, *id.* at 1138-39, and the allegations included specific dates

REPLY MEM. ISO MOTION TO DISMISS          -10-
CASE NO. 8:25-CV-01596-FWS-KES

of internal calls in which the CEO admitted that the market was "saturated" and that the company would have to change its model. *Id.* at 1139, 1144. In light of these witness allegations, the *Quality* court held that the CEO's public statements regarding the "growing" pipeline were not puffery. *Id.* at 1138-39, 1144.[7] Nothing similar is alleged in the CAC.

## III.   THE ITEM 303 ALLEGATIONS DO NOT STATE A CLAIM

Plaintiff alleges that statements in RxSight's SEC filings between May 2024 and May 2025 were misleading because RxSight should have disclosed an allegedly "then-known trend of adoption gaps and challenges, flat adoption, and slowing adoption by cohort." ¶147. The Opposition, like the CAC, does not cite to any contemporaneous facts showing that Kurtz or Thunen had identified adoption issues as a material known "trend[] or uncertaint[y]" at the time of any of the challenged filings. MTD at 14-15; Opp. at 16-17. Instead, Plaintiff points to vague allegations regarding unspecified "data" and internal reports that allegedly were sent to Dr. Kurtz and discussed in unidentified meetings at unspecified times. Opp. at 16. These conclusory allegations lack any detail showing that trends had been identified at the time of each challenged SEC filing.[8] MTD at 14-15. Plaintiff's attempt to plead its Item 303 claim by hindsight (Opp. at 16) also is unavailing. MTD at 15; *infra*, Section IV.C.

---

[7] Contrary to Plaintiff's claims (Opp. at 8), the Ninth Circuit has found conference call responses such as those challenged here to be inactionable puffery. *See Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1098-99 (9th Cir. 2022) (statements regarding "tremendous growth" in China made in response to analysts' questions were puffery, despite allegations that growth in China had "slowed materially"); *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1058 (9th Cir. 2014) ("The heart of [the] allegations, which target misstatements made during various analyst calls, are not actionable because they are . . . mere corporate puffery.").

[8] *In re ON24, Inc. Sec. Litig.*, 2026 WL 45259, at *2-3 (9th Cir. Jan. 7, 2026) (Opp. at 17) is inapposite as it involved Section 11 claims, which do not require scienter and are not subject to the PSLRA's heightened pleading requirements.

## IV. PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

To satisfy the PSLRA's heightened pleading requirements, Plaintiff must plead particularized facts "that give rise to a 'strong'—*i.e.*, a powerful or cogent—inference," of an "'intent to deceive, manipulate, or defraud,'" *Tellabs*, 551 U.S. at 319, 323, or deliberate recklessness. *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1065-66 (9th Cir. 2008). In evaluating scienter allegations, courts "compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). Even if falsity had been adequately alleged—it has not—Plaintiff fails to allege any particularized, contemporaneous facts directly bearing on the mental states of the Individual Defendants at the time each challenged statement was made, much less facts giving rise to the requisite strong inference of scienter. MTD at 15-23.

### A. No Contemporaneous, Contradictory Knowledge Is Alleged.

Plaintiff's Opposition does not identify any particularized, contemporaneous facts in the CAC showing that either Individual Defendant was aware of—much less conspired to conceal—material, nonpublic information from investors at the time any challenged statement was made. *See* MTD at 15-23; Opp. at 17-20. Indeed, Plaintiff concedes that the CAC does not contain any allegations from any witnesses with knowledge about the state of mind of either Dr. Kurtz or Ms. Thunen. Opp. at 17-21. Because Plaintiff fails to allege "'*specific contemporaneous statements or conditions* that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made,'" the CAC's allegations fail to give rise to a strong inference of scienter. *Metzler*, 540 F.3d at 1066 (citation omitted) (emphasis added).

**1.     The Generic Chat Board and Internal Document Allegations Fall Far Short of Satisfying the PSLRA.**

The Opposition cites vague allegations about doctor chat boards, surveys, and internal reports that lack any specificity and are untethered to any specific statements.  Opp. at 17-19.  As shown in the Opening Brief and *supra* at 5-7, the chat board and internal documents allegations lack the particularized details necessary to plead a strong inference of scienter.  MTD at 16-18.  In particular, Plaintiff fails to plead the contradictory facts contained in any single specific chat, report, or survey that Dr. Kurtz or Ms. Thunen purportedly reviewed prior to making any challenged statement.  MTD at 16-18.  Missing from the CAC "are allegations linking specific reports and their contents to the executives[.]"  *Intuitive Surgical, Inc.*, 759 F.3d at 1062-63; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087-88 (9th Cir. 2002) (plaintiffs must plead "corroborating details," such as dates and content of reports).

**2.     The Data Monitoring Allegations Fail to Plead Scienter.**

Plaintiff contends that general statements made by the Individual Defendants about monitoring internal data "create a strong inference that Defendants possessed actual knowledge of falsity."  Opp. at 18.  Merely alleging that an executive was knowledgeable about the company's business, however, does not plead a strong inference of scienter.  *See Zucco*, 552 F.3d at 1000 (finding "allegations that senior management . . . closely reviewed the accounting numbers . . . each quarter . . ., and that top executives had several meetings in which they discussed quarterly inventory numbers" insufficient to plead a strong inference of scienter).  "Without 'some additional allegation of specific information conveyed to management' relating to the alleged misrepresentations by Defendants, 'corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter."  *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *19 (N.D. Cal. May 22, 2012) (citation omitted), *aff'd*, 759 F.3d 1051 (9th Cir. 2014).

Plaintiff's reliance on *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), is misplaced, as the vague allegations in the CAC are dramatically different from the highly particularized allegations in *Reese*, a case involving catastrophic oil spills. Opp. at 18, 19. In *Reese*, a BP executive made statements suggesting that a large oil spill in one of its pipelines that was due to corrosion was anomalous and limited to that pipeline. The *Reese* court found that it was "absurd" to suggest that the defendant executive, who had personally received a corrective action order from a regulator identifying corrosion issues prior to the BP executive making the anomaly statements, was not aware that the second "objectively similar" pipeline also was at risk for corrosion-related failures. 747 F.3d at 576. No such similarly detailed facts are alleged in the CAC.

**B.    The "Motive" Allegations Do Not Provide the Missing Inference of Scienter.**

**1.    The Stock Sales Were Neither Unusual Nor Suspicious.[9]**

*Dr. Kurtz*. Plaintiff's failure to allege the percentage of shareholdings sold by Dr. Kurtz is not surprising given that his stock sales represented just 10% of his total holdings. MTD at 19. Plaintiff does not dispute that Dr. Kurtz's sales represented a small percentage of his overall holdings (Opp. at 21-22); courts have found much larger percentages insufficient to plead scienter. MTD at 19 (citing cases).

Plaintiff also does not dispute that all of Dr. Kurtz's stock sales were made pursuant to a predetermined Rule 10b5-1 plan established prior to the start of the class period. MTD at 19. Numerous courts have found that such predetermined sales weigh against an inference of scienter. *See id.* (citing cases); *see also Ng v. Berkeley Lights, Inc.*, 2024 WL 695699, at *15 (N.D. Cal. Feb. 20, 2024) ("sales made according to pre-determined plans weigh against an inference of scienter");

---

[9] Plaintiff does not contest that the allegations regarding stock sales by non-defendants also fail to plead scienter. *Compare* MTD at 20 n.14, *with* Opp. at 21-22 (no discussion of non-defendants' stock sales).

*City of Pontiac Gen. Emps. Ret. Sys. v. First Solar Inc.*, 2023 WL 155861, at *9 (D. Ariz. Jan. 11, 2023) (together with other factors, "the existence of Rule 10b5-1 trading plans … rebut a strong inference of scienter").

Plaintiff's contention that "Defendants cannot defeat scienter by introducing extrinsic materials regarding Rule 10b5-1 trading plans" (Opp. at 22) is incorrect. Courts regularly consider Rule 10b5-1 plan information on motions to dismiss in weighing competing inferences and concluding that sales pursuant to predetermined plans undercut scienter.  MTD at 19 (citing cases); *supra* at 14-15; *Welgus v. TriNet Grp., Inc.*, 2017 WL 6466264, at *18 (N.D. Cal. Dec. 18, 2017) ("predetermined" plan stock sales "rebut[] an inference of scienter"), *aff'd*, 765 F. App'x 239 (9th Cir. 2019); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059, 1069 (N.D. Cal. 2012) (taking judicial notice of Forms 4 in finding that such plans provide "innocent, alternative explanation for the stock sales," thus "negat[ing] an inference of scienter").

Plaintiff's attempts to suggest that the sales were suspicious because Dr. Kurtz had not previously sold shares (Opp. at 21) are unavailing.  As shown in the Opening Brief, an absence of prior sales is insufficient to plead a strong inference of scienter because there is no prior trading history to compare the class period sales against. *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1037-38 (9th Cir. 2002); *Vantive*, 283 F.3d at 1095-96; MTD at 20.  Likewise, Plaintiff's suggestion that the timing of the sales was somehow suspicious is unavailing.  Opp. at 21.  Plaintiff disregards that all but one of Dr. Kurtz's sales occurred in the first three months of the twenty-month class period, *i.e.*, long before many of the statements that allegedly inflated the price of RxSight stock were made.  MTD at 19-20.

*Ms. Thunen*.  Plaintiff does not dispute that most of Ms. Thunen's stock sales also were made pursuant to Rule 10b5-1 plans, nor does Plaintiff contend that the percentage of shares sold was abnormally large.  *Compare* MTD at 20, *with* Opp. at 21-22).  For the reasons discussed above, Plaintiff's arguments regarding the

REPLY MEM. ISO MOTION TO DISMISS         -15-
CASE NO. 8:25-CV-01596-FWS-KES

absence of sales prior to the start of the class period fail to plead a strong inference of scienter. MTD at 20. Nor does the timing of Ms. Thunen's sales (Opp. at 21), all of which were made long before the July 8, 2025 announcement, give rise to a strong inference of scienter. MTD at 20.[10]

### 2. The Secondary Offering Fails to Establish Scienter.

Plaintiff's conclusory allegations regarding RxSight's May 2024 secondary offering also fail to plead a strong inference of scienter. MTD at 20-21. Plaintiff's contention that there was "no offering alleged" in *Rigel* is simply wrong. Opp. at 22 n.34. As the Ninth Circuit's decision plainly reflects, the rejected motive allegations in *Rigel* included the plaintiff's argument "that it alleged a motive to commit fraud when it alleged that, at the time the allegedly fraudulent statements were made, Defendants were seeking a partner and ***were planning to raise capital in a stock offering***." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (emphasis added).[11]

### C. The July 2025 Statements Do Not Constitute "Admissions."

Because there are no contemporaneous facts alleged in the CAC showing that any challenged statement was deliberately false when made, Plaintiff's Opposition relies on mischaracterizing statements made at the end of the class period, claiming that they somehow constitute "admissions" of fraud over a nearly two-year class

---

[10] *Trade Desk*, which Plaintiff cites in a notice of recent authority (ECF No. 52), is inapposite. *In re The Trade Desk, Inc. Sec. Litig.*, 2026 WL 790911 (C.D. Cal. Mar. 17, 2026). That case involved allegations regarding twelve CWs, including "multiple former employees [who] stated that the executive defendants received regular reports detailing in real-time lagging adoption rates throughout the Class Period," despite defendants' statements to the contrary. *Id.* at *3. In addition, the CEO sold $443 million of stock during the class period, including $48 million "just one day before the alleged corrective disclosure." *Id.* at *6, *12. The allegations in *Trade Desk* are thus readily distinguishable from the allegations in the CAC.

[11] Plaintiff does not allege a single fact, much less particularized facts, in support of Plaintiff's claim that Defendants used a "reward program" to allegedly "conceal dissatisfaction and artificially inflate adoption and utilization." Opp. at 20.

period.  As courts have recognized, "plaintiffs cannot merely speculate in hindsight that because defendants ran into a sales slowdown and reduced revenue by the end of the Class Period that earlier statements of good financial health must have been inaccurate."  *In re Twitter, Inc. Sec. Litig.*, 506 F. Supp. 3d 867, 890 (N.D. Cal. 2020), *aff'd sub nom. Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611 (9th Cir. 2022); *Cloudera*, 121 F.4th at 1189; *Scandlon v. Blue Coat Sys., Inc.*, 2013 WL 5313168, at *3 (N.D. Cal. Sept. 23, 2013) (end of class period statement "was in no way, shape, or form, an 'admission' that prior statements had been knowingly false or misleading").[12]

*First*, Plaintiff's argument that RxSight experienced but did not disclose "worsening" ***adoption*** of its system during the class period (Opp. at 1-2, 4, 9-10, 11-12, 17) is undone by the CAC itself.  The CAC defines "adoption" as LDD purchases that had started to perform LAL procedures.  ¶¶39-41; Opp. at 3.  The CAC admits that Defendants ***disclosed*** flat and declining LDD sales during the class period, the primary component and necessary first step for adoption, including declining LDD sales from 83 in 4Q24, to 73 in 1Q25, to 40 in 2Q25.  ¶¶15-17, 62-66, 72, 111, 121.  There can be no end-of-class period admission for something previously disclosed.

*Second*, with respect to Defendants' supposed admissions regarding ***utilization***, it makes sense that Defendants could not evaluate the ***"newer" 2024*** annual cohort until the cohort was complete at the end of 2024 and had a quarter of utilization results in ***1Q25***.  MTD at 21 (February 2025 "a little too early" for analysis of 2024 cohort).  Defendants promptly disclosed this comparison on April

---

[12] Plaintiff's "admissions" cases are readily distinguishable. *See In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *10 (N.D. Cal. Nov. 4, 2020) (CEO's later statement was "an 'I knew it all along' type of admission" that "Apple had information suggesting economic pressure in China on November 2, 2018, contrary to [CEO's] challenged statement"); *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528 (C.D. Cal. June 7, 2018) (CEO "subsequently admitted" that company indeed used "growth hacking" technique despite his previous statement about company's "avoidance" of the technique).

2-3, 2025, within days after the conclusion of 1Q25, disclosing that "cohorts[] were not growing as quickly." ¶¶64, 111. And Defendants repeatedly disclosed during the class period, long before the so-called admission, that regardless of utilization ramp, cohorts ultimately end up at approximately the same number of LALs per LDD per month, *i.e.*, utilization. ¶¶86, 100, 106 (statements made on June 18, 2024, November 7, 2024, and February 25, 2025).

*Third*, Plaintiff repeatedly attempts to transform the statement that the "*oldest cohort* is pretty flat going back four quarters" (Exhibit 5, ECF No. 47-7 ("Ex. 5"), at 11) into a broader statement that utilization for *all* annual cohorts was "flat going back four quarters." *E.g.*, Opp. at 2-19. Throughout the Opposition, Plaintiff misleadingly omits the "oldest cohort" language. *Id.* Even if one (incorrectly) accepts that the "pretty flat" statement applies to all cohorts, "four quarters" covers results for 2Q25, 1Q25, 4Q24, and 3Q24, *i.e.*, starting with Defendants' November 2024 statements. Thus, even in Plaintiff's view of the so-called admissions, the class period could not start until November 7, 2024, and not *a year earlier* on November 9, 2023, as alleged in the CAC. ¶4. Unfortunately for Plaintiff, even this shorter class period does not state a claim because the CAC admits that Defendants disclosed a sequential "decline in utilization" on November 7, 2024. ¶98; Opp. at 4.

*Fourth*, Plaintiff erroneously claims that Defendants "admitted" on July 8, 2025 that "customer satisfaction" problems had been causing "slowing adoption and flat utilization" for over a year. *E.g.*, Opp. at 2, 5, 12, 15. To the contrary, when asked about feedback from physicians, Dr. Kurtz stated that it was positive:

> I think that our existing customers, especially the ones who've adopted the technology and used it extensively, remain highly favorable. And even doctors who have adopted the technology to a lesser extent are generally extremely favorable about the clinical results.

Ex. 5, at 12. Defendants did not state on July 8, 2025—or at any other time—that adoption or utilization issues were due to "problems" with "customer satisfaction."

Ex. 5.  Plaintiff's entire "admissions" theory thus rests on a false premise.[13]

*Finally*, Plaintiff ignores that Defendants clearly stated that the shortfall in 2Q25 occurred late in the quarter, the sales funnel had looked strong up until the end of quarter, and it was "a new phenomenon."  MTD at 5, 21.[14]

### D.    The CAC Does Not Support a Core Operations Inference.

Plaintiff's attempts to plead a strong inference of scienter based on a core operations inference are unavailing.  In particular, Plaintiff fails to plead specific, contemporaneous information conveyed to management and related to the fraud or facts identifying circumstances that are so "unusual" that it would be "absurd" not to impute scienter.  MTD at 22.  *Construction Laborers Pension Trust of Greater St. Louis v. Funko, Inc.*, 166 F.4th 805 (9th Cir. 2006), is readily distinguishable.  Opp. at 20.  In *Funko*, the court found that it would be absurd for the CEO and CFO "not to have closely monitored the company's management of its inventory" when, among other things, the company had previously faced a securities class action over related inventory mismanagement issues.  *Id.* at 832.  Nothing similar is alleged here.

---

[13] Plaintiff incorrectly contends that "Defendants do not meaningfully dispute that these admissions contradict their earlier statements[.]"  Opp. at 10.  Defendants' motion to dismiss clearly argues that none of the challenged statements was false or misleading, and Defendants showed that the July 8, 2025 statements were not "admissions."  MTD at 21-22.

[14] Plaintiff's attempts to have the Court ignore the full context of the July 8, 2025 statements and only consider incomplete snippets offered by Plaintiff (Opp. at 19; *see id.* at 2) is contrary to Supreme Court and Ninth Circuit authority.  As the Supreme Court made clear in *Tellabs*, courts "***must consider*** … documents incorporated into the complaint by reference" when weighing competing inferences in a securities case.  551 U.S. at 322 (emphasis added).  Because the July 8, 2025 conference call forms the basis of Plaintiff's claims and is thus incorporated by reference in the CAC, the full contents and context of statements made during the call must be considered in evaluating competing inferences of scienter.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (the incorporation by reference doctrine permits courts to consider the full text of documents that a complaint quotes or references in order to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims").

**E.    The CAC Allegations Fail Both Individually and Holistically.**

Plaintiff's conclusory allegations—which are bereft of any factual support from witness statements, contemporaneous internal documents, or inconsistent statements or actions by Defendants—fail to plead a strong inference of fraud. MTD at 15-23. Moreover, competing and compelling inferences of non-culpable conduct weigh against a strong inference of scienter here. *Tellabs*, 551 U.S. at 323-324; MTD at 22-23. Plaintiff's vague allegations do not overcome the competing inference that Defendants correctly believed RxSight's system was effective, that customer adoption and utilization growth would continue, were surprised when 2Q25 sales dropped off at the end of the quarter, and promptly disclosed disappointing results and challenges, including factors outside RxSight's control. MTD at 22-23.[15]

**CONCLUSION**

For the foregoing reasons, the CAC should be dismissed.

Dated:  April 24, 2026

WILSON SONSINI GOODRICH & ROSATI,
Professional Corporation

By:    /s/ *Gregory L. Watts*
        Gregory L. Watts
        Email: gwatts@wsgr.com

*Attorneys for Defendants RxSight, Inc., Ron Kurtz, and Shelley Thunen*

---

[15] Because the Section 10(b) claims fail, the Section 20(a) claim should be dismissed. *Intuitive Surgical*, 759 F.3d at 1064 n.6; MTD at 23.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants RxSight, Inc., Ron Kurtz, and Shelley Thunen, certifies that this brief contains 6,580 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Gregory L. Watts*

Gregory L. Watts

REPLY MEM. ISO MOTION TO DISMISS      -21-
CASE NO. 8:25-CV-01596-FWS-KES